**In re the Marriage of Madelyn Joyce PEARSON, Petitioner, Respondent,**

v.

**Lawrence A. PEARSON, Appellant.**

**No. C5–84–1010.**

Court of Appeals of Minnesota.

Feb. 26, 1985.

David H. Conn, Nodland, Conn, Judd & Nordaune, St. Louis Park, for respondent.

Stuart Gale, Bloomington, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

Husband appeals the property settlement, maintenance and insurance provisions of a dissolution decree. We affirm in part, reverse and remand in part.

## FACTS

Lawrence and Madelyn Pearson were both 58 when their 36 year marriage was dissolved in May 1984. During the marriage Lawrence worked as a teacher. His 1983–84 salary was $30,697. He nets approximately $1,700 per month. He has a vested pension which would yield $1,200 per month if he retired immediately. He plans to retire soon. In addition, he has a vested interest in a tax-sheltered annuity with a present value of $19,783.15.

Madelyn worked as a homemaker during the marriage. She has no significant employment history outside the home. From a farm jointly owned with her sister she receives $3,450 per year, less taxes and costs of administration. She had a heart attack in February 1983 and continues to suffer from severe coronary artery disease. She has high medical expenses.

The trial court found that Madelyn's heart condition, her age, and her lack of significant employment history or skills, render her unemployable and in need of continuing maintenance. The dissolution decree ordered Lawrence to pay her $600 per month maintenance until her death or remarriage or until his death or retirement, whichever comes first. It also required him to provide group dependent medical insurance for Madelyn for as long as he is obligated to pay maintenance. If such coverage ceases to be available because he remarries or goes to work for an employer not covered by Minn.Stat. 62A.21, subd. 2a (1980), he must pay additional maintenance sufficient to allow Madelyn to obtain coverage equal to that contemplated by the statute.

The trial court divided the couple's approximately $167,000 worth of marital assets virtually equally. It awarded Law-

rence non-marital property worth $22,900, including a home occupied by his mother. The court awarded Madelyn $4,000 worth of coins purchased with inheritance money and a half interest in a farm. The half interest was worth $86,000.

Madelyn acquired the farm in part by inheritance and in part by purchase from her siblings. In 1964 Madelyn's father died, leaving her and each of her six siblings a $\frac{1}{7}$ interest in a farm near Litchfield. Madelyn's share of the farm was worth approximately $4,000. She also received approximately $2,500 cash from her father's estate. Madelyn had no checking or savings account of her own, and did not write checks on the parties' joint checking account. Lawrence handled all the family finances. She gave him her inheritance money with the understanding that he would save it for her. He placed the money in the joint checking account.

In 1968 Madelyn and her sister Irene Stuetz arranged to buy their siblings' interest in the farm. They borrowed $19,000 from a bank and each paid $1,500 down to finance the purchase. The bank required both of the women's husbands be listed as obligors on the mortgage, but the property remained solely in the women's names. The farm yielded sufficient income to cover all of the mortgage payments. The loan has been completely repaid.

Lawrence paid Madelyn's $1,500 down payment from their joint checking account. The trial court found that the money came from the inheritance proceeds Madelyn had entrusted to Lawrence earlier.

Lawrence managed the farm until the dissolution. For his services, he received five percent of the gross profits plus expenses.

## ISSUES

1. Did the trial court err in finding that the purchase of an interest in a farm was traceable to an inheritance by the wife where part of the inherited funds were placed in an account controlled by the husband.

2. Did the trial court err in ordering the husband to pay maintenance and provide medical insurance for his wife until his retirement?

## ANALYSIS

### I.

 Lawrence contends that the trial court abused its discretion in categorizing Madelyn's entire interest in the farm as non-marital and awarding it to her. Property acquired by either spouse during a marriage is presumed to be marital. Minn. Stat. § 518.54, subd. 5 (1982). However, non-marital property specifically includes assets inherited by one spouse from a third party. Minn.Stat. § 518.54, subd. 5(a). It also includes all or part of an asset acquired through investment of non-marital property, including an inheritance. Minn. Stat. § 518.54, subd. 5(c). *Brown v. Brown*, 316 N.W.2d 552 (Minn.1982). The party seeking the non-marital classification must show by a preponderance of the evidence that the asset was "acquired in exchange for non-marital property." *Kottke v. Kottke*, 353 N.W.2d 633, 636 (Minn.Ct. App.1984), *pet. for rev. denied*, (Minn. Dec. 20, 1984).

 Lawrence concedes that $\frac{2}{14}$ of Madelyn's $\frac{7}{14}$ share of the farm is non-marital property because she inherited it from her father. However, he contends that because the remaining $\frac{5}{14}$ share purchased from Madelyn's siblings cannot be traced directly to Madelyn's inheritance it is marital property.

The trial court was correct in finding that the initial investment in the farm of $1,500 was non-marital property of Madelyn. The court erred, however, in finding the balance of the purchase price to have been made with non-marital assets. The $\frac{5}{14}$ interest cost $10,000, plus $500 for a land bank bond. The payments on the mortgage have been made from the proceeds of the rental of the land and farm buildings. The income from this land investment, as well as the land purchased from the income, is marital property.

*Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn. 1981).

Under the *Woosnam* formula, adopted by the Minnesota Supreme Court in *Schmitz,* Madelyn's non-marital interest is about 40 percent of the current value of her half interest in the farm. *See Woosnam v. Woosnam,* 587 S.W.2d 262 (Ky. 1979). Correction of the trial court's error increases the $167,000 marital estate by approximately $50,000.

## II.

■ Lawrence also challenges the maintenance and medical insurance provisions of the decree. He contends that the maintenance provision is unreasonable because it would make it financially impossible for him to accept part-time employment after his retirement from the Bloomington Public School system. Similarly, he contends that the decree provision requiring him to provide dependent medical coverage for Madelyn until his retirement would preclude him from accepting employment with an employer not covered by Minn.Stat. 62A.21, subd. 2a (1980). In that case he would have to pay sufficient additional maintenance to allow Madelyn to purchase coverage comparable to that required by the statute. Because of Madelyn's health condition, the cost could be prohibitive.

Both complaints are premature. This court will not speculate upon Lawrence's future employment. If at some later date his acceptance of part-time employment or employment with a non-covered employer creates a hardship, he can seek modification of the decree pursuant to Minn.Stat. § 518.64, subd. 2 (Supp.1983).

### DECISION

We remand with instructions that the trial court reconsider the propriety of the marital property division in view of the increase in the marital estate.

Affirmed in part, reversed and remanded in part.