In re the Marriage of Mae A.
WIEGERS, Petitioner,
Appellant,

v.

Henry Albert WIEGERS, Respondent.

No. CX–90–1772.

Court of Appeals of Minnesota.

March 19, 1991.

Daniel S. Rethmeier, St. Cloud, Minn., for petitioner, appellant.

Thomas J. Rief, Alexandria, Minn., for respondent.

Considered and decided by DAVIES, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from May 30, 1990, findings of fact, conclusions of law, order for judgment, and judgment and decree of dissolution. Appellant challenges the trial court's classification of certain assets as nonmarital and the distribution of the parties' property.

## FACTS

Appellant Mae Wiegers and respondent Henry Wiegers were married on November 23, 1968. For each, this was a second marriage. No children were born as a result of the marriage. At the time of the dissolution, appellant was 71 years old and respondent was 80.

Respondent has Alzheimer's disease. He lives in a closed ward of a nursing home. He is mentally incompetent and did not testify at the dissolution hearing.

Appellant had a heart attack in December 1987. After her recovery, she resumed living with respondent. In August 1988, she returned to a hospital. She now lives in an apartment where nursing care and meals are available.

The major legal issue on appeal is whether the trial court erred in classifying bank accounts (primarily certificates of deposit) as both marital and nonmarital property.

The focus of the trial was to trace the present accounts to their original source. The sources include each party's social security benefits, interest on bank accounts, respondent's earnings from employment, proceeds from the sale of premarital farm equipment, proceeds from the sale of livestock acquired or raised both before and after the parties' marriage, and income from respondent's rented[1] farm.

## ISSUES

1. Did the trial court err by concluding certain certificates of deposit and passbook savings accounts, including accrued interest, were respondent's nonmarital property?

2. Did the trial court err by concluding appellant changed names on some of the bank accounts?

3. Did the trial court err by not awarding appellant a portion of respondent's nonmarital property pursuant to Minn.Stat. § 518.58, subd. 2?

4. Did the trial court err by not apportioning the proceeds from the sale of respondent's residence between marital and nonmarital interests?

## ANALYSIS

I.

*Marital property*

"Marital property" is property acquired by either party during their marriage. Minn.Stat. § 518.54, subd. 5 (1988). All property acquired by either party during the marriage is presumed to be marital property, regardless of how title is held. *Id.* The presumption of marital property is overcome by showing that the property is nonmarital. *Id.*

"Nonmarital property" means property real or personal, acquired by either spouse, before, during, or after the existence of their marriage, which

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

---

1. Respondent had a fully operational farm before marriage to appellant but has not farmed it himself for some time. Instead, respondent rented out the entire farm and, during the marriage, collected income from his renters, including income from both the sale of milk and the sale of certain capital assets.

(d) is acquired by a spouse after the valuation date; or

(e) is excluded by a valid antenuptial contract.

*Id.*

Whether property is marital or nonmarital is a question of law upon which appellate courts exercise independent judgment. *Johnson v. Johnson,* 388 N.W.2d 47, 48–49 (Minn.App.1986). A spouse claiming that property is nonmarital must prove the necessary underlying facts by a preponderance of the evidence. *Id.,* 388 N.W.2d at 49.

When nonmarital and marital property are commingled, the nonmarital investment may lose that character unless it can be readily traced. *Id.,* 388 N.W.2d at 50. "The party seeking the nonmarital classification must show by a preponderance of the evidence that the asset was 'acquired in exchange for nonmarital property.'" *Pearson v. Pearson,* 363 N.W.2d 337, 339 (Minn.App.1985) (citation omitted).

While the appreciation in value of a nonmarital asset is nonmarital, *see* Minn. Stat. § 518.54, subd. 5(c), income from a nonmarital asset is a marital asset. *Swick v. Swick,* 467 N.W.2d 328 (Minn.App.1991); *Linderman v. Linderman,* 364 N.W.2d 872, 876–77 (Minn.App.1985). This includes both farm rental income (*Linderman,* 364 N.W.2d at 877) and investment income. *See also Swick,* 467 N.W.2d at 331–32 (interest earned on nonmarital certificate of deposit is marital property); *Moore v. Moore,* 391 N.W.2d 42, 44 (Minn.App.1986) (royalties and dividends paid on nonmarital stocks are marital).

The trial court made two errors when it classified the bank accounts as marital and nonmarital property: (1) it did not distinguish between farm income and proceeds from the sale of nonmarital farm assets and (2) it did not distinguish between nonmarital certificates of deposit and the interest income earned by them, which is marital.

The trial court's approach is illustrated by a statement contained in its findings of fact:

The following Certificates were originally purchased with funds derived from income from the sale of milk, livestock and machinery. [Respondent] commenced these investments prior to his marriage to [appellant] with the intent that the assets would eventually be received by his children. [Respondent] continued to invest pursuant to this custom and habit subsequent to his marriage to [appellant].

The trial court concluded all certificates, including accrued interest, whether accrued before marriage or after, were nonmarital. The trial court believed interest income from the farm earned during marriage was nonmarital either because the farm itself was nonmarital or because, before the marriage, respondent established the "custom and habit" of saving for his children. Neither is persuasive. Income, even from a nonmarital farm, is marital property if accrued during marriage. Custom and habit of saving for children, even if formed before marriage, does not exempt nonmarital income from becoming marital property.

There are 11 certificates of deposit listed in the findings of fact. Certificate No. 7258 is an example. The trial court described the history of Certificate 7258 as follows:

CERTIFICATE NO. 7258. This Certificate in the amount of $4,338.58 was also purchased by [respondent] prior to the marriage on May 11, 1966. It originally was in the name of [respondent] jointly with Gloria Rygh. [appellant] caused the name on this Certificate to be changed so as to remove Gloria's name and in Gloria's place, put her name and then the name of herself jointly with her children. This Certificate was owned by [respondent] prior to the marriage and is a nonmarital asset.

This description is consistent with the deposition testimony of a bank officer. The certificate was originally purchased for $1,000 in 1966 (before the parties' marriage). The original $1,000 and interest earned before the marriage is nonmarital. However, most of the $3,338.58 interest

was earned after the marriage and is therefore marital property.

Another example is Certificate No. 7254. The trial court describes the history of No. 7254 as:

> CERTIFICATE NO. 7254. This Certificate in the amount of $1,100.00 was purchased on October 10, 1981, for the same price. It originally was purchased and placed in [respondent's] name jointly with Haven Wiegers. Subsequently, [appellant] changed the names on this Certificate to place it jointly in her name and then in her name with one of her children. This Certificate was purchased as a result of *income derived from the farm* [respondent] owned prior to this marriage.

(Emphasis added). There is nothing in the record that indicates this certificate was purchased with proceeds from the sale of a nonmarital asset. If it was purchased from farm income, as the trial court found, it is a marital asset, not nonmarital.

A final example is Certificate No. 53975:

> CERTIFICATE NO. 53975. This Certificate was purchased on December 10, 1987, for the amount of $5,000, and jointly was placed in the name of the parties. It was purchased with proceeds from Certificate No. 49891 and Savings Account No. 2008567. Certificate No. 49891 was purchased on December 9, 1985, for the sum of $2,927.58. [respondent] placed this Certificate in his name jointly with Gloria Rygh. This Certificate was purchased with the proceeds from Certificate No. 44328 which, likewise, was in the name of the Respondent and Gloria Rygh. Savings Account No. 2008567 was opened on January 25, 1984, with a deposit of $8,794.97. This savings account was opened with funds received from the operation of [respondent's] premarital farm.

The two sources of this certificate are the savings account and Certificate No. 44328. Certificate No. 44328 was purchased on December 9, 1983, from a source unknown to the bank. There is no indication of the source of the funds used to acquire the savings account or Certificate No. 44328.

Nor is there any allocation between the "nonmarital" funds and the marital interest earned by those funds.

The trial court erred by concluding that several of the accounts were adequately traced to nonmarital property. The trial court did not separate income earned from the farm during marriage (marital) and proceeds from the sale of premarriage capital assets (nonmarital). Also, the trial court should distinguish between the nonmarital asset, and interest income earned on that asset during marriage, which is a marital asset.

## II.

### Name change

■ The history of several of the bank accounts includes one or more name changes. Some, for example, were originally in the name of respondent and his children, then changed to appellant and respondent, and then changed to appellant and her children.

Except for stating that some of the changes were made by appellant, the trial court did not make specific findings explaining the reasons or propriety of the changes. Appellant believes the trial court concluded the name changes were all made by her for improper purposes. Since the name or names on the accounts is not determinative of whether the accounts are marital or nonmarital, the name changes are not an issue in this case.

## III.

### Invading nonmarital property

■ Minn.Stat. § 518.58, subd. 2 (1988) allows a court to award up to one-half of a spouse's nonmarital property to the other spouse if necessary to prevent unfair hardship. Awards of nonmarital property are left to the discretion of the trial court. *Doering v. Doering*, 385 N.W.2d 387, 391 (Minn.App.1986). The statute allows the court to apportion nonmarital property if it finds unfair hardship

> based on all relevant factors including the length of the marriage, any prior

**346**

marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

Minn.Stat. § 518.58, subd. 2.

■■■ Appellant was awarded $60,450, of which $51,950 was in liquid assets. Respondent was awarded $131,480, all in liquid assets. Both parties are elderly and in poor health. Neither has any likelihood of obtaining employment or acquiring additional assets. Therefore, the important statutory factors here are need and income. Since the statutory list is nonexclusive, other factors may be considered. In this case, the life expectancy of the parties may be an important consideration.

Appellant's income is limited to $244 per month from social security plus earnings from the liquid portion of her share of the property. Her expenses are $1,318 per month. Respondent's income is $681 per month plus earnings from the property settlement. His expenses are $2,574 per month.

The trial court concluded no hardship was created by a property distribution that did not include an award of either party's nonmarital property to the other. This conclusion was reasonable and proper on these facts.

### IV.

*Household goods*

■■■ Appellant testified she purchased a washing machine, a dryer, drapes, curtains, and carpeting for respondent's nonmarital home. Appellant argues she is therefore entitled to share in the proceeds from the sale of the residence.

The trial court found no capital improvements to the homestead had been made and that the homestead remained nonmarital property. The trial court concluded the items purchased by appellant were not capital improvements. Given trial court discretion, this is a proper conclusion. Further, the court has authority to award

household goods to either party. Minn. Stat. § 518.58, subd. 1 (Supp.1989).

### DECISION

We reverse in part trial court conclusions as to which assets are marital and which are nonmarital, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.