**In re the Marriage of Darlene SWICK, Petitioner, Appellant,**

v.

**Harry Raymond SWICK, Respondent.**

**No. C8–90–2001.**

Court of Appeals of Minnesota.

March 19, 1991.

Review Denied May 16, 1991.

Daniel L. Giles, Christianson, Stoneberg, Giles & Meyers, P.A., Marshall, for appellant.

Paul M. Malone, Malone & Mailander, Slayton, for respondent.

Considered and decided by PARKER, P.J., and FOLEY and KLAPHAKE, JJ.

## OPINION

FOLEY, Judge.

Appellant Darlene Swick challenges the trial court's award to respondent Harry Raymond Swick of the full value plus interest of his nonmarital certificate of deposit and its award of child support. We affirm the award of child support but reverse and remand the property distribution decision.

## FACTS

Darlene and Harry married on September 9, 1981. Both had children from previous marriages. When the parties separated in November 1988, they had two children, ages 9 and 7, born of their marriage. At the time of dissolution in June 1990, Harry was 69 and Darlene was 44.

Harry is the majority shareholder of S & D Railway Corporation, owning 21 shares. This company repairs and installs railroad tracks. Although Harry has been a laborer and supervisor for this company in the past, his physical ailments prevent him from working any more than one or two years in the future. Harry has no other skills, has little education, and is illiterate. Based on Harry's financial records from the past five years, the trial court found that he had an average monthly disposable income of $2,108. Harry limited his wages from S & D Railway so they would not

adversely affect his social security payments.

Darlene has a ninth grade education, no specific skills, and has worked as a bookkeeper and waitress. During the marriage, Darlene owned nine shares of S & D Railway. Since the separation, Darlene has worked as a waitress earning $503 monthly. She receives $256 per month social security payments for the support of their two children.

Prior to marriage, Darlene owned property near Ruthton, Minnesota and Harry owned property near Balaton, Minnesota. Upon dissolution, each party received his/her own property and kept the bank accounts in his/her name. In addition, Harry bought out Darlene's shares in S & D Railway, giving her $28,236 cash value for her nine shares. The court awarded Darlene $12,100 as the cash value of her portion of the marital property.

Also prior to marriage, Harry owned a $25,000 certificate of deposit. The parties do not dispute that this asset is nonmarital property. Nor do they dispute that during the course of their marriage this certificate of deposit earned $23,492.35 in interest. Harry and his adult daughter are joint tenants of this certificate of deposit. The trial court awarded the entire sum of interest to Harry as nonmarital property upon dissolution.

Because of Harry's age and physical ailments, the court found him limited in ability to pay Darlene maintenance or child support. The court did not award maintenance but did award $500 child support payments for their two minor children.

## ISSUES

1. Did the trial court err by concluding that interest earned on a nonmarital certificate of deposit was nonmarital property?

2. Did the trial court err when it did not divide Harry's nonmarital assets between the parties?

3. Did the trial court err in setting child support below the guideline amount?

## ANALYSIS

1. Whether property is marital or nonmarital is a question of law that this court may review with independent judgment. *Johnson v. Johnson*, 388 N.W.2d 47, 48–49 (Minn.App.1986). This court must defer to the trial court's findings of underlying facts such as whose resources were used to acquire the assets. *Id.* Those findings will only be set aside if they are clearly erroneous. Minn.R.Civ.P. 52.01.

■ Under Minnesota law, "nonmarital property" is real or personal property,

acquired by either spouse before, during or after the existence of their marriage, which

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

(d) is acquired by a spouse after the valuation date; or

(e) is excluded by a valid antenuptial contract.

Minn.Stat. § 518.54, subd. 5 (1988). The statute presumes that all property acquired during the marriage is marital property. *Id.* When nonmarital and marital property are comingled, the nonmarital asset may lose that status unless the party can trace it to a nonmarital source. *Johnson*, 388 N.W.2d at 48.

■ To establish property as nonmarital, a spouse must prove by a preponderance of the evidence that he/she acquired the asset " 'in exchange for' non-marital property." *Kottke v. Kottke*, 353 N.W.2d 633, 636 (Minn.App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984). *See also Campion v. Campion*, 385 N.W.2d 1, 5 (Minn.App. 1986); Minn.Stat. § 518.54, subd. 5. The Minnesota Supreme Court has recognized that some assets may be both marital and nonmarital in nature. *Nardini v. Nardini*, 414 N.W.2d 184, 193 (Minn.1987); *Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn. 1981).

■ The nature of the asset determines its distribution upon dissolution. Here, the court is required to distinguish between the nature of an asset brought into the marriage, the increase in the asset's value, and the money the asset generates during the marriage.

The original asset that a spouse brings to the marriage is nonmarital in nature if it meets the definition of Minn.Stat. § 518.54, subd. 5(a)–(e). In addition, section 518.54, subd. 5(c) specifically defines nonmarital property to include the increase in an asset's value, or its "appreciation." Appreciation is intrinsic to the asset itself. We have distinguished between the treatment of active and passive appreciation in considering an asset's value.

■ Upon dissolution, a spouse may receive the original nonmarital asset plus any passive appreciation in value. *Johnson*, 388 N.W.2d at 49. To illustrate, we consider the example of a painting that a wife brings into the marriage as nonmarital property. Over time the painting appreciates in value. Upon dissolution, the wife receives the painting, now worth more due to its appreciation, as her nonmarital property. The appreciation is not severable from the asset.

■ Active appreciation occurs when the parties contribute to the asset's increase in value during the marriage. If both spouses have contributed time, effort or money to the nonmarital asset, or have actively participated in its maintenance, improvement or management, then any appreciation may be marital property, divisible upon dissolution. *Nardini*, 414 N.W.2d at 193; *Campion*, 385 N.W.2d at 3, 5; *Johnson*, 388 N.W.2d at 49.

Thus, if a wife brought to the marriage a piece of real estate to which the couple made no contributions, then, like the painting, the land and its appreciation would be hers upon dissolution. But if the couple participated in the maintenance, improvement or management of the property, then the appreciation would be divisible as a marital asset upon dissolution while the property itself would remain the wife's nonmarital asset. *See Campion*, 385

N.W.2d at 4–5 (appreciated value of apartment building); *Johnson*, 388 N.W.2d at 49 (simple appreciation of profit-sharing plans); and *Rosenberg v. Rosenberg*, 379 N.W.2d 580, 583 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986) (shares of stock).

■ However, quite distinct from appreciation is *income* from a nonmarital asset. While appreciation is intrinsic to the asset itself, income is a *product* of the asset. The original drafters of the Uniform Marriage and Divorce Act commented:

The phrase "increase in value" * * * is not intended to cover the income from property acquired prior to marriage. Such income is marital property. Similarly, income from other nonmarital property acquired after the marriage is marital property.

*Nardini*, 414 N.W.2d at 193 (quoting Unif. Marriage and Divorce Act § 307 comment at 204 (1970)). Unlike appreciation, income becomes an asset "acquired during the marriage" and, as marital property, is divisible between the parties upon dissolution. *See* Minn.Stat. § 518.54, subd. 5; *Nardini*, 414 N.W.2d at 193–94 (cash dividends from stock); *Wiegers v. Wiegers*, 467 N.W.2d 342 (Minn.App.1991) (interest earned from nonmarital certificates of deposit); *Moore v. Moore*, 391 N.W.2d 42, 44 (Minn.App. 1986) (interest earned from stock debentures); *Rosenberg*, 379 N.W.2d at 583 (stock proceeds); *Linderman v. Linderman*, 364 N.W.2d 872, 876–77 (Minn.App. 1985) (rental income); *Pearson v. Pearson*, 363 N.W.2d 337, 339 (Minn.App.1985) (farm rental income).

■ Because such income acquired during marriage is marital property, any assets acquired with the income generated by a nonmarital asset are also marital property divisible upon dissolution. *Pearson*, 363 N.W.2d at 339; *Moore*, 391 N.W.2d at 44.

■ Here, Darlene argues that the interest the certificate of deposit earned during their marriage constituted income they should divide as a marital asset upon dissolution. We agree and reaffirm the distinc-

tion that Minnesota courts have recognized and enunciated between income from non-marital assets and appreciation of nonmarital assets.

The asset involved here is both marital and nonmarital in nature. Harry's principal certificate of deposit of $25,000 is undisputedly his nonmarital property. However, over the years that principal has produced $23,492.35 of interest. The trial court treated the interest as an increase in the certificate of deposit's value. We realize that the certificate of deposit has remained untouched without further contributions or withdrawals during the marriage. Yet, under general principles of tax law, interest constitutes "income" for tax purposes, and not "appreciation" of an asset's value. I.R.C. § 61; Minn.Stat. § 290.01, subd. 20 (1988). The interest was not an intrinsic increase in the certificate of deposit's value; rather it was a separate addition to the principal, an amount that accrued periodically on the certificate of deposit.

Furthermore, appreciation of an asset can only be realized when the asset is sold or distributed. In contrast, the interest here was available as a liquid asset to the parties during their marriage in a manner analogous to rental income, cash dividends or stock proceeds.

Tested by these factors, the interest that Harry's certificate of deposit generated during the marriage constitutes income from a nonmarital asset. Minnesota law treats such income as marital property divisible upon dissolution. The trial court erred in equating this interest income with appreciation in value. We reverse and remand this issue for equitable division of Darlene's share of Harry's interest in the $23,492.35 income from the certificate of deposit.

2. Based on our decision requiring remand and recalculation of Darlene's interest in the certificate of deposit, we need not reach Darlene's second issue of proper division of nonmarital assets.

■ 3. Finally, Darlene alleges the trial court erred by setting Harry's child support obligation below the guideline amount. We disagree.

The trial court has broad discretion in providing for child support in a dissolution action. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). This court will not reverse the trial court's determination unless it was clearly erroneous. *Bollenbach v. Bollenbach*, 285 Minn. 418, 426, 175 N.W.2d 148, 154 (1970).

■ The statutory child support guidelines apply to all cases. *Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn.1986). However, the court should not apply the guidelines blindly, but rather should consider them as one of many factors in the support determination. *Id.* at 863–64. The trial court must make findings regarding the children's needs and the needs and resources of each parent to establish its rationale for any deviation from the guidelines. *Letourneau v. Letourneau*, 350 N.W.2d 476, 479 (Minn.App.1984); Minn.Stat. § 518.551, subd. 5(b), (e) (1988).

Under the statutory child support guidelines, Harry should pay 30% of his monthly income for the support of his two children; a monthly obligation of $632.40. The trial court ordered Harry to pay $500 monthly child support. To support this decision, the trial court found that Harry has an average monthly disposable income of $2,108 and expenses of $1,128.16, and that Darlene has a monthly income of $503 and expenses of $1,689.78 [1] for herself and her two children. Because Harry does not earn a steady set income, the trial court calculated Harry's monthly income as an average of his last five years of earnings. The trial court also found that Harry's age and ailments will prevent him from working within a few years.

■ Generally, conditions that might affect an obligor's ability to function and earn income are not valid reasons for a

---

**1.** At trial Darlene admitted that this figure is not accurate but reflects what her reasonable expenses could be. On appeal, Darlene reduced her expenses to $1,584.78 but did not identify which budget line she reduced.

downward deviation from child support guidelines. *Koury v. Koury*, 410 N.W.2d 31, 33 (Minn.App.1987). However, unlike *Koury*, Harry does not currently have a steady, determinable flow of income. The trial court here did not have a firm income basis from which to determine Harry's child support obligation. Based on the unique facts of this case, we find no abuse of discretion in the child support award of $500 per month.

### DECISION

We affirm the trial court's order of $500 monthly child support payments. Because the trial court erred in characterizing the interest income from a nonmarital certificate of deposit as nonmarital property, we reverse and remand the issue for equitable division of the interest between the parties.

Affirmed in part, reversed in part and remanded.