**In re the Marriage of: Faith A. WOPATA, Petitioner, Appellant,**

v.

**Jack A. WOPATA, Respondent.**

**No. C9-92-2271.**

Court of Appeals of Minnesota.

April 6, 1993.

---

3. Section 471.9975 has remained the same since the MPEA was originally enacted in 1984.

Ellen E. Tholen, Anderson Law Office, Grand Rapids, for appellant.

Larke L. Huntley, Huntley Law Office, Grand Rapids, for respondent.

Considered and decided by RANDALL, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Faith Wopata, challenges the decree of dissolution, and subsequent trial court orders amending the original findings of fact and conclusions of law. She contends the trial court erred by (1) granting the parties joint legal and physical custody of their two minor children; (2) awarding respondent, Jack Wopata, his nonmarital property claims; (3) improperly valuing certain marital assets and debts; (4) reserving the issue of spousal maintenance; and (5) awarding respondent both federal income tax dependency exemptions. We affirm in part, reverse in part and remand.

## FACTS

In November 1990, the parties separated and appellant moved out of the family home. The parties established a shared custody arrangement for their two minor children, born in 1980 and 1984, whereby each parent would have one child for one week, both children for one week, and no children for one week. After three months, appellant moved the court for a grant of temporary custody because she felt the parties' arrangement was negatively affecting the children. In February 1991, the trial court entered a temporary order which provided that the parties would continue to share custody on a two-week rotation system, with the noncustodial parent having visitation.

A contested dissolution hearing was held beginning in April 1991 and concluding in July 1991. Both parties sought sole legal and physical custody of the children, and testified that since their separation, there had been frequent conflicts regarding the manner in which the children should be raised. The major area of conflict was religion. Appellant wanted the children to attend Lutheran church with her; respondent wanted the children to be raised Episcopalian.

Based upon testimony of the parties and their friends and relatives, and after considering the court-ordered custody evaluation, the trial court granted joint legal and physical custody to each party for six months of the year, with the noncustodial parent having visitation every other weekend from Thursday night until Saturday night.

The court awarded respondent approximately $39,000 as his nonmarital property.

A dissolution decree was issued on August 7, 1991. The trial court denied appellant's post-trial motions on custody and the nonmarital property award, but amended the findings to reflect that the parties were unable to communicate and unable to reach any agreement regarding the welfare of the children. Based upon this amended finding, the trial court struck its previous grant of joint legal custody, but failed to specify which parent was to be the children's legal custodian.

Because the trial court had failed to grant legal custody and make appropriate findings, this court, in November 1991, dismissed appellant's attempt to challenge the decree and postdecree orders, and remanded for determination of legal custody and more detailed findings. In January 1992, the trial court issued additional findings on the statutory factors, but again neglected to grant legal custody. Again, this court dismissed appellant's attempt to challenge the trial court's actions and remanded with express instructions to issue an order determining legal custody.

In October 1992, the trial court issued an order that left the physical custody arrangement (six months with each parent) unaltered, and provided "that the parent having actual physical custody shall also during that period of time have legal custody of the minor children."

## ISSUES

1. Did the trial court err in granting the parties joint legal and physical custody of their two minor children?

2. Did the trial court err in awarding respondent his nonmarital property claims?

3. Is the trial court's valuation of certain marital assets and debts clearly erroneous?

4. Did the trial court err in reserving the issue of spousal maintenance?

5. Did the trial court err in awarding respondent both federal income tax dependency exemptions?

## ANALYSIS

### I.

■ "A grant of custody should be based on the best interests of the child." *Estby v. Estby*, 371 N.W.2d 647, 649 (Minn. App.1985). In determining a child's best interests, the trial court must consider all of the relevant statutory factors listed in Minn.Stat. § 518.17, subd. 1 (1990). Where a grant of either joint legal or joint physical custody is contemplated, the court must also consider additional factors which relate to the parties' ability to cooperate in the raising of their children. *See* Minn. Stat. § 518.17, subd. 2 (1990 & Supp.1991).

The trial court is afforded broad discretion in making custody decisions. *See Estby*, 371 N.W.2d at 649. On appeal, this court's review is limited to "determining whether the trial court abused its discretion by making unsupported findings or improperly applying the law." *Sinsabaugh v. Heinerscheid*, 428 N.W.2d 476, 478 (Minn.App.1988).

### Joint Legal Custody

■ The trial court originally granted the parties joint legal custody of their two sons. However, the court subsequently issued amended findings which reflected the parties' inability to communicate and cooperate with each other and, thus, vacated the grant of joint custody. After two aborted attempts to appeal resulted in remands, the trial court ultimately provided that each party would be the childrens' legal custodian for the six months of the year that party had physical custody. We agree with appellant that the trial court erred in structuring legal custody in such a fashion.

Minn.Stat. § 518.003, subd. 3(b) (1990), defines joint legal custody as the equal right

> to participate in major decisions determining the child's upbringing, including education, health care, and religious training.

Although the trial court's legal custody decision, when viewed at a given moment in time, appears to vest custody solely in one

parent, the illusory nature of that vesting is demonstrated when legal custody is viewed over a period of one year. In one year each of the parents alternately exercises the exclusive right to make the important decisions in the children's lives. We conclude that the trial court's decision constitutes a de facto grant of joint legal custody.

◼ Joint legal custody is presumed to be in a child's best interests. Minn.Stat. § 518.17, subd. 2. However, "[j]oint legal custody should be granted only where the parents can cooperatively deal with parenting decisions." *Estby*, 371 N.W.2d at 649. Where the evidence indicates that the parties lack the ability to cooperate and communicate, joint legal custody is not appropriate. *See id.; see also Digatono v. Digatono*, 414 N.W.2d 498, 502 (Minn.App.1987) (award of sole legal custody warranted due to intense turmoil in parents' relationship), *pet. for rev. denied* (Minn. Jan. 15, 1988); *Andersen v. Andersen*, 360 N.W.2d 644, 646 (Minn.App.1985) (award of sole legal custody appropriate due to parties' intense anger towards one another which resulted in "tug-of-war" over child); *Heard v. Heard*, 353 N.W.2d 157, 161–62 (Minn.App. 1984) (award of joint legal custody constituted abuse of discretion where parties' inability to communicate led to quarrels between the parties that resulted in stress for the children).

◼ The findings upon which the trial court's legal custody decision rests state in part:

> [T]he parents are totally unable to agree. It is very evident that significant animosities exist between the parties. That communication between them is impossible. Both parties have attempted to use the children as a weapon against the other.
>
> [T]he parties are unable to communicate and unable to reach any agreement as the same relates to the welfare of the children, indeed, probably to any item whatsoever.

These findings irreconcilably conflict with and cannot support the grant of legal custody to each parent for six months of each year.[1]

◼ Finally, even if we were to assume that the trial court did not establish a de facto joint custody arrangement, it very definitely did provide that legal custody transfer from one parent to the other every six months. In so doing the trial court institutionalized a process which by its terms violates Minnesota statutory mandates intended to prevent the frequent modifications of custody; modifications that can be so destabilizing in the life of a child. Minn.Stat. § 518.18 (1990) provides in part:

> (a) Unless agreed to in writing by the parties, no motion to modify a custody order may be made earlier than one year after the date of the entry of a decree of dissolution or legal separation containing a provision dealing with custody * * *.
>
> (b) If a motion for modification has been heard, whether or not it was granted, unless agreed to in writing by the parties no subsequent motion may be filed within two years after disposition of the prior motion on its merits.

The stability and security so important to minor children are served by the mandates of section 518.18. Stability and security are not served by the custody arrangement established in this case.

### Joint Physical Custody

◼ "Joint physical custody" is defined as an arrangement where

> the routine daily care and control and the residence of the child is structured between the parties.

Minn.Stat. § 518.003, subd. 3(d). Joint physical custody, sometimes referred to as divided custody, is not a preferred arrangement. *Peterson v. Peterson*, 393 N.W.2d 503, 506 (Minn.App.1986). The supreme court has recognized that:

> shifting legal custody from one parent to the other each six months.

---

1. The impasse regarding the religious education and practice of the minor children is but one example among many of the negative impacts of

Regularity in the daily routine of providing the child with food, sleep, and general care, as well as stability in the human factors affecting the child's emotional life and development, is essential, and it is difficult to attain this regularity and stability where a young child is shunted back and forth between two homes.

*Kaehler v. Kaehler,* 219 Minn. 536, 539, 18 N.W.2d 312, 314 (1945). This court has also recognized the preference against divided custody, noting that the maintenance of stability and continuity in a child's living situation serves the child's best interests. *See, e.g., Heard,* 353 N.W.2d at 162. Thus, the concerns expressed here in regard to the stability and security of minor children apply with equal validity in the case of joint physical custody.

A grant of joint physical custody will only be appropriate in "exceptional cases." *Brauer v. Brauer,* 384 N.W.2d 595, 598 (Minn.App.1986). For example, this court affirmed a grant of joint physical custody where the record indicated that the parties had been able to cooperate in maintaining a joint custody arrangement on their own for almost three years during the period between their initial separation and divorce. *Veit v. Veit,* 413 N.W.2d 601, 605 (Minn. App.1987). Similarly, we affirmed a grant of joint legal and physical custody where the record reflected that the parties shared the same parenting philosophies and were able to communicate and cooperate regarding the major decisions in their children's lives. *Berthiaume v. Berthiaume,* 368 N.W.2d 328, 332–33 (Minn.App.1985).

■ The record before us contrasts starkly with the records in *Veit* and *Berthiaume.* The best interests of the minor children here require resolution of the joint physical custody issue in a manner similar to the holding in *Greenlaw v. Greenlaw,* 396 N.W.2d 68, 74 (Minn.App.1986). In that case, we decided a grant of joint physical custody was an abuse of discretion where the difficulties between the parties were so significant and pervasive as to preclude cooperation. *Id.; see also Heard,* 353 N.W.2d at 162 (award of joint physical custody constituted an abuse of discretion

where record showed that parties could not cooperate or resolve their own disputes).

■ Here, the trial court granted joint physical custody based upon its conclusion that, under the "best interest" factors of Minn.Stat. § 518.17, subd. 1, either party was qualified to raise the minor children. However, the fact that appellant and respondent are equally qualified to raise the children does not mean that they are qualified to raise them jointly. *See Heard,* 353 N.W.2d at 161. Because the evidence and the findings relative to the cooperation factors set out under Minn.Stat. § 518.17, subd. 2, expressly contradict the court's grant of joint physical custody, we reverse.

It is with great reluctance and frustration that we remand the issues of legal and physical custody. Inevitably, remand will result in prolongation of litigation that already has been far too prolonged and acrimonious; litigation that has ill-served the best interests of the minor children around which the entire custody proceeding should revolve. *See Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985) ("[t]he guiding principle in all custody cases is the best interests of the child"). We have given serious consideration to deciding in this court the issues of legal and physical custody. However, an intense examination of the evidence and the findings of the trial court convinces us that given the state of the record before us, a determination of custody by this court would be an unacceptable excursion into factfinding and an inappropriate expansion of our proper standard of review. Most important, the record before us closed two years ago. We know nothing of the events that have affected and shaped the lives of the minor children during the inappropriately lengthy passage of time since issuance of the original decree. *See Heard,* 353 N.W.2d at 162 ("trial court has responsibility to learn how case is affected by events since trial").

We direct that this case be expedited upon remand, and that the trial court reopen the record to receive additional evidence of the present circumstances of the minor children. The additional evidence, in the court's discretion, may include inter-

views with the minor children. They are now 12 and 9. The trial court shall grant legal and physical custody to one of the parties based upon evidence originally presented and evidence presented as part of the expanded and updated record.

A final note: This case demonstrates dramatically how critical is the need for early and final resolution of the issue of custody of minor children when a marriage ends. Decisions regarding the custody of children may well be the most difficult that courts are called upon to make. Nonetheless, children must not be left in cruel custodial limbo so damaging to young lives while labored judicial processes grind on. Institutional delays which are tolerated when property, chattels, and dollars are at issue are unacceptable when the stability and security of children are at stake. Whether by legislation or by rule, we must provide the mechanisms by which the best interests of minor children not only are served, but are served expeditiously.

## II.

Respondent sought to establish that certain funds he brought into the marriage or received during the marriage were nonmarital property. The sums at issue, totalling approximately $39,000, were received pursuant to two contracts for deed (Riehle contract and Silva contract) executed on a parcel of land he had owned prior to the marriage. The trial court awarded respondent all of his nonmarital claims.

■ Under Minn.Stat. § 518.54, subd. 5 (1990), property is presumed to be marital unless it is specifically proven to be nonmarital. "Nonmarital property" is defined as:

property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which

\* \* \* \* \* \*

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in [clause (b)].

*Id.* On established facts, whether property is marital or nonmarital is a question of law upon which this court will exercise its independent judgment. *Wiegers v. Wiegers,* 467 N.W.2d 342, 344 (Minn.App.1991).

■ A party seeking to establish the nonmarital character of an asset must do so by a preponderance of the evidence. *Freking v. Freking,* 479 N.W.2d 736, 738 (Minn.App.1992). In order to maintain its nonmarital character, nonmarital property must be kept separate from marital property or, if commingled, must be readily traceable. *Wiegers,* 467 N.W.2d at 344.

■ Appellant contends that respondent failed to satisfy his burden of proof with respect to the tracing of the $12,-595.56 received for the 1983 Silva contract payoff, the $11,864.32 balance on a savings certificate purchased with the Silva down payment, and the $354.45 balance in a bank account related to the Silva down payment.[2] We agree. The record is devoid of any evidence that explains what ultimately happened to the aforementioned sums after they were received by respondent. Rather, the evidence produced ·at trial suggests that these amounts were commingled with marital funds. Where a party cannot show that nonmarital money was invested in a readily traceable asset, the trial court should characterize it as marital property. *See Hafner v. Hafner,* 406 N.W.2d 590, 593–94 (Minn.App.1987). Because respondent failed to satisfy his burden of proof with respect to tracing the sums attributable to the Silva contract, the trial court erred in classifying these sums as nonmarital property. We remand with instructions to reapportion the marital property award in recognition of the additional $24,814.33 now in the marital estate and of the reduction of respondent's nonmarital award by a like amount.

**2.** Appellant does not challenge the trial court's award of the $14,000 outstanding balance on the Riehle contract as a nonmarital asset.

## III.

Appellant argues that the trial court erred in its valuation of certain marital assets and debts. Again, we agree.

 The trial court is afforded broad discretion in making valuation decisions. *Letsch v. Letsch*, 409 N.W.2d 239, 242 (Minn.App.1987). However, the trial court's valuation must be

> supported by either clear documentary or testimonial evidence or by comprehensive findings issued by the court.

*Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn.1983), *quoted in Letsch*, 409 N.W.2d at 242. The trial court's findings of fact relative to the issue of valuation will not be set aside unless clearly erroneous. *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975).

The trial court found that the parties' John Deere riding lawnmower had a value of $1,000, awarded that item to appellant, and included its value as part of her marital property award. There is no evidence of record, either documentary or testimonial, regarding the lawnmower's value. While it would not be economically feasible to remand solely for reconsideration of a disputed $1,000 item, we are also remanding several important issues in this case. Therefore, we direct the trial court on remand to make findings to support the valuation and award of the tractor, and to receive whatever evidence is necessary to support the findings.

The trial court also found that the parties' orthodontist debt of $2,580 should be borne equally. In addition, the court directed that respondent be credited with a $1,000 payment he made in July 1991. The record is devoid of any evidence of respondent's alleged payment. We remand for findings to support the credit, and for receipt of evidence in the discretion of the court.

 Finally, we find no support in the record for the trial court's valuation of $26,000 for a Dain Bosworth account ("account") held in respondent's name. The trial court is required to value marital assets for the purposes of division between the parties as of the day of the initially scheduled prehearing conference unless the parties agree to a different date or the trial court makes a specific finding that another date is fair and equitable. Minn.Stat. § 518.58, subd. 1 (Supp.1991). There was no agreement by the parties or findings by the trial court. Therefore, the account should have been valued as of March 22, 1991. There is no evidence in the record of the value of the account on that date. This absence is all the more glaring in view of respondent's testimony that the value of the account fluctuated between a high of almost $39,000 in October of 1990 and a low of about $23,000 in April of 1991. Because the trial court's valuation of $26,000 is unsupported by the evidence, and because it is not clear that the account was valued as of the appropriate reference date, we must remand for findings as to value on a date specified by the trial court. Additional testimony on this issue may be taken at the discretion of the trial court.

## IV.

The trial court did not make an award of spousal maintenance but did retain jurisdiction over the issue. Appellant contends that the court's reservation of the maintenance issue was error. We disagree.

 The determination of spousal maintenance is committed to the sound discretion of the trial court and the court's decision will not be reversed absent an abuse of that discretion. *Maeder v. Maeder*, 480 N.W.2d 677, 679 (Minn.App.1992), *pet. for rev. denied* (Minn. Mar. 19, 1992).

 Minn.Stat. § 518.55, subd. 1 (1990) provides that a trial court may reserve jurisdiction over the issue of maintenance for determination at a later date. The record reflects that respondent has suffered two heart attacks during the past ten years. Although the parties are both presently financially self-sufficient, respondent's health is uncertain. Therefore, reservation of the maintenance issue was appropriate. *See Van De Loo v. Van De Loo*, 346 N.W.2d 173, 178 (Minn.App.1984) (reservation of maintenance issue was not

an abuse of discretion where wife's cancer, although in remission, could recur).

### V.

Due to a disparity in the parties' incomes, the trial court awarded respondent both federal income tax dependency exemptions for the parties' two children. The federal Internal Revenue Code provides that, upon dissolution of a marriage, the parent who has custody of the child for the greater portion of the calendar year is entitled to the dependency exemption. 26 U.S.C.A. § 152(e)(1) (1990). Under the Code, appellant and respondent would each be entitled to claim one child as a dependent. However, the trial court may, in its discretion, allocate the exemptions in a manner other than that provided by the IRS. *See Fudenberg v. Molstad,* 390 N.W.2d 19, 21 (Minn.App.1986).

Although we do not find the trial court's allocation of dependency exemptions to be clearly erroneous, we nevertheless vacate this award and remand for whatever redetermination may be required upon resolution of the custody issues.

### DECISION

The grant of legal and physical custody is reversed and remanded for redetermination of those issues consistent with this opinion. The award to respondent of his nonmarital property claims arising out of the Silva contract for deed is reversed and remanded for inclusion of an additional $24,814.33 as marital property. The trial court's valuation and award of the John Deere lawnmower, the credit given respondent on the orthodontist account, the valuation of the Dain Bosworth account, and the allocation of dependency exemptions are reversed and remanded for further proceedings not inconsistent with this opinion. We affirm the reservation of maintenance.

**Affirmed in part, reversed in part and remanded.**