In re the MARRIAGE OF Bradley Alan FITZGERALD, Petitioner, Respondent,

v.

Laurie Anne FITZGERALD, Appellant.

No. C2-00-1557.

Court of Appeals of Minnesota.

June 19, 2001.

Douglas G. Sauter, Jason P. Rietz, Douglas G. Sauter & Associates, P.A., Coon Rapids, MN, for appellant.

A. Larry Katz, Susan A. Daudelin, Katz & Manka, Ltd., Minneapolis, MN, for respondent.

Considered and decided by LANSING, Presiding Judge, G. BARRY ANDERSON, Judge and FOLEY, Judge.*

## OPINION

**G. BARRY ANDERSON, Judge.**

Appellant challenges the district court's dissolution judgment, arguing that the district court erred by (1) miscalculating respondent's income, thereby understating his child-care contribution; (2) miscalculating appellant's nonmarital share of her retirement plans; and by (3) concluding that appellant had not proven a nonmarital interest in the homestead and her income tax refunds. We hold that the district court's findings concerning the property were not clearly erroneous and that they

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

sustain the property division. But because the district court miscalculated respondent's child-care obligation, we affirm the judgment as modified.

## FACTS

Appellant Laurie Anne Fitzgerald and respondent Bradley Alan Fitzgerald were married April 1, 1989. The parties have two children, a daughter, age ten, and a son, age three. Custody is not disputed. Appellant also has an emancipated daughter from her first marriage. Both appellant and respondent reside in Princeton, Minnesota. Respondent is employed as a territory representative for a corporate automobile leasing company and, based on 1999 income, earns approximately $123,500 per year. Appellant is an air traffic controller employed by Princeton Automated Flight Service; she earns approximately $61,478 per year.

The district court calculated respondent's net income and, in doing so, deducted expenses other than those listed within Minn.Stat. § 518.551, subd. 5(b) (2000). By judgment dated August 8, 2000, the district court ordered respondent to pay monthly child support of $1,780 and monthly child-care expenses of $146.64. The district court also equally divided the parties' property; each party received property worth $112,549.50. The property included the parties' homestead, funds from appellant's employer-sponsored retirement plans, and income tax refunds appellant received for tax years 1998 and 1999. Neither party moved for amended · findings of fact, amended conclusions of law, or a new trial.

## ISSUES

I. Did the district court err by miscalculating respondent's net income, thereby understating his child-care obligation?

II. Did the district court err by determining the homestead and income tax refunds to be marital property, and by miscalculating appellant's nonmarital interests in her employer-sponsored retirement plans?

## ANALYSIS

On appeal from judgment where, as here, there has been no motion for new trial, the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. *Erickson v. Erickson,* 434 N.W.2d 284, 286 (Minn.App.1989).

### I.

Appellant first argues that the district court clearly erred by finding respondent's net monthly income to be $5,980, and further erred by using that net income as a basis for calculating respondent's child-care contribution. The district court is required to allocate the costs of child care to each parent in proportion to each parent's net income after the transfer of child support and spousal maintenance, unless the allocation would be substantially unfair to either parent. Minn.Stat. § 518.551, subd. 5(b)(2)(ii)(E) (2000). Minn.Stat. § 518.551, subd. 5(b) defines an obligor's net income as total monthly income minus deductions. *Id.* Permitted deductions include: (1) federal and state income taxes; (2) social security and reasonable pension deductions; (3) union dues; (4) individual, group, or dependent health insurance coverage costs or actual medical expenses; and (5) a current child support or maintenance order. *Id.*

The district court determined respondent's net monthly income to be $5,980. In arriving at that figure, the district court subtracted expenses from respondent's

gross monthly income, including (1) savings bonds ($240); (2) a charitable contribution ($24); (3) life insurance ($362.10); (4) company car expense ($1,200); (5) long-term disability insurance ($396.54); and (6) a discount employee stock purchase plan ($400).

We do not believe that these deductions fit within the statutory categories. The calculation of net income for support purposes allows a reasonable pension deduction. Minn.Stat. § 518.551, subd. 5(b). Case law has interpreted this statutory statement to allow deductions for reasonable, non-pension retirement contributions. *See, e.g., State ex rel. Rimolde v. Tinker*, 601 N.W.2d 468, 471 (Minn.App.1999) (401K deduction); *Mueller v. Mueller*, 419 N.W.2d 845, 847 (Minn.App.1988) (IRA deduction). There is no evidence that the savings bonds or stock purchase plan were part of a retirement plan. Life and long-term disability insurance are not health insurance coverage costs. The charitable donations and company car expense bear no relation to any of the statutory categories. Because these deducted expenses do not fit within the statutory categories, the district court erroneously understated both respondent's net monthly income and his child-care contribution.

Child-care costs are computed by the formula established by Minn.Stat. § 518.551, subd. 5(b)(2)(ii)(E) (2000).[1] Using annual child-care costs of $3,744, respondent's net monthly income of $4,200 (after subtracting his $1,780 child-support obligation), and appellant's net monthly income of $4,740, the district court calculated respondent's child-care contribution to be $146.64. Had the district court not erro-

neously subtracted the nondeductible expenses from respondent's gross income, his actual net income, after subtracting his child-support obligation, would have been $6,822. Using that figure, respondent's proportion of the child-care costs is 59%. Thus, respondent's monthly child-care contribution should be $184.08.

■ Respondent argues that his net monthly income, for the purpose of determining child-care costs, cannot exceed the $6,280 "income limit" set by Minn.Stat. § 518.551, subd. 5(b) and (k), which provide the method for determining child support. Respondent relies on the language of Minn.Stat. § 518.551, subd. 5(b)(2)(ii)(E), which provides that the child-care contribution shall be determined as a proportion of each parent's net income "as determined under this subdivision * * *." We reject respondent's argument.

While the determinations of a party's child-support obligation and child-care contribution are both based on a party's net monthly income, those obligations are calculated differently. A guideline child-support obligation is computed by applying the statutory guidelines to the net-income figure that is calculated by reducing a party's total monthly income by the permitted deductions listed in the statute. The percentages listed in the guidelines, however, do not apply to amounts exceeding $6,280. Minn.Stat. § 518.551, subd. 5(b) and (k); *see also* Cost of Living Adjustment to Child Support Guidelines, No. C9–85–1134 (Minn. Mar. 12, 1998 & Apr. 19, 2000) (adjusting figure to account for cost-of-living changes). Thus, the limitation on child support is *not* a function of a limitation on the calculation of net monthly

---

1. Minn.Stat. § 518.551, subd. 5(b)(2)(ii)(E) provides that:

    The court * * * shall allocate the costs to each parent in proportion to each parent's net income, as determined under this subdi-

vision, after the transfer of child support and spousal maintenance * * *. The cost of child care * * * is 75 percent of the actual cost paid for child care * * *.
*Id.*

income, but of the amount of income subject to the guidelines. No such limitation is included in Minn.Stat. § 518.551, subd. 5(b)(2)(ii)(E), which simply states that the cost of child care is to based on the parents' "net income, as determined under this subdivision * * *."

We also reject respondent's argument that the district court erred in calculating appellant's net income because the court permitted a retirement plan deduction. Respondent did not seek to obtain review of this issue by filing a notice for review and nothing in the record suggests that this deduction is unreasonable.

We therefore modify the judgment insofar as it sets the amount of respondent's child-care contribution, and order that contribution to be $184.08 per month.

## II.

■ Appellant next argues that the district court erred in its characterization and division of marital property. The question of whether property is marital or nonmarital is a question of law that this court may review de novo, but the underlying facts found by the district court will not be set aside unless they are clearly erroneous. *Swick v. Swick*, 467 N.W.2d 328, 330 (Minn.App.1991), *review denied* (Minn. May 16, 1991).

### A. Homestead

■ The district court found that the homestead was purchased on June 4, 1987, treated the homestead as marital property, and awarded it to appellant. The district court further found that, although appellant claimed a $10,000 nonmarital interest in the homestead, she presented neither testimony nor documentary evidence to support that contention. Appellant argues that the district court erred by failing to recognize her $10,000 nonmarital interest in the homestead because her pleadings

state that interest and it is undisputed that the purchase took place two years before parties' marriage.

■ Minnesota law provides that nonmarital property includes real or personal property acquired before the marriage, as well as increases in the value of that property. Minn.Stat. § 518.54, subd. 5 (2000). Property is presumptively marital; a spouse claiming a nonmarital interest must prove that interest by a preponderance of the evidence. *Id.; Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn.1997). Calculation of a nonmarital interest requires courts to consider the amount of the original nonmarital contribution, the value of the property at the time of marriage, and the present value of the property. *Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn.1981).

Appellant, originally represented by counsel in this dissolution action at a July 1999 settlement conference, elected to proceed to trial without counsel. Appellant presented no testimony concerning her claim to a nonmarital interest in the homestead and no documentary evidence to support the $10,000 figure referenced in her pleadings. Nevertheless, she asks that this court, in equity, recognize her claim. But the record provides no basis for doing so. The evidence is insufficient to allow the district court or this court to calculate appellant's claimed nonmarital interest because there is no evidence of her original contribution or the homestead's value at the time of the parties' marriage.

■ Although some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys and must comply with court rules. *Heinsch v. Lot 27, Block 1 For's Beach*, 399 N.W.2d 107, 109 (Minn. App.1987); *Ronay v. Ronay*, 369 N.W.2d 12, 14 (Minn.App.1985). The record shows

that the district court explained, and appellant understood, the necessity of presenting evidence at trial. We conclude that the district court did not err by finding that appellant failed to prove, by a preponderance of the evidence, a nonmarital interest in the homestead.

### B. Retirement Plans

■ Appellant argues that the district court erred by failing to recognize her nonmarital interests in her pension plan and her Federal Thrift Savings Plan (TSP).[2] Appellant contends that her interests are 28%, calculated by dividing the number of years she participated in the plans before marriage by the total number of years of participation before dissolution.

The TSP account, on October 31, 1999, had a value of $122,666. The district court awarded appellant a 28% nonmarital share of those funds ($34,346.48), plus an additional $53,912.02, which amounts to more than half of the $88,319.52 marital portion of the TSP account value. In addition, the district court provided that, pursuant to a qualified domestic relations order, appellant will, upon retirement, receive a nonmarital share of her pension funds. That share is to be calculated by dividing the months of her participation in the plan before the marriage and after dissolution by the total number of months of service to her employer. We conclude that there is no error because the district court awarded appellant nonmarital interests in both retirement plans based on the formula she suggested.[3]

### C. Income Tax Refunds

■ Appellant decided to file separate income tax returns in 1998 and 1999, thereby increasing respondent's income tax liability. Appellant argues that the district court erred by finding income tax refunds she received for those tax years to be marital property because the parties separated in June 1998. Appellant also contends that the refunds represent income withheld and now returned, and cites *Kruschel v. Kruschel,* 419 N.W.2d 119 (Minn.App.1988), for the proposition that a district court may not treat an item as both income and property.

The district court did not, however, treat appellant's income tax refunds as income for either party, but instead treated the refunds as property. *See Rundell v. Rundell,* 423 N.W.2d 77, 81–82 (Minn.App. 1988) (affirming conclusion that tax refunds acquired during the marriage were a marital asset); *Crace v. Crace,* 396 N.W.2d 877, 881 (Minn.App.1986) (same), *review denied* (Minn. Jan. 27, 1987).

"All property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property" regardless of whether title is held individually or in co-ownership. Minn.Stat. § 518.54, subd. 5. Property is nonmarital if acquired "after the valuation date * * *." Minn.Stat. § 518.54, subd. 5(d) (2000). Generally, the valuation date is to be the "day of the initially scheduled prehearing settlement conference." Minn. Stat. § 518.58, subd. 1 (2000). In this case, it appears that the initial pre-hearing settlement conference took place on April 20, 1999. The district court, however,

---

**2.** The record shows that the Federal Thrift Savings Plan is a retirement savings plan for federal government employees.

**3.** Although respondent argues that appellant has not proven a 28% nonmarital interest in

the TSP funds, we decline to address that issue because respondent did not seek to obtain review of that issue by filing a notice for review pursuant to Minn. R. Civ.App. P. 106.

used different valuation dates for various assets, including December 31, 1999, and did so without objection by appellant. Although an argument for an alternative valuation date is certainly sustainable, particularly with respect to the 1999 income tax refund, we conclude that the district court did not err by treating appellant's 1998 and 1999 tax refunds as marital property and equitably dividing the assets.

## DECISION

The district court did not err by (1) finding appellant had not proven her claim to a nonmarital share in the homestead; (2) awarding appellant nonmarital interests in her retirement plans in accordance with the formula she suggested; or by (3) concluding that appellant's 1998 and 1999 income tax refunds are marital property. The district court miscalculated, however, respondent's net income by deducting expenses which do not fit the categories listed in Minn.Stat. § 518.551, subd. 5(b) (2000), thereby understating his required child-care contribution. We therefore affirm the judgment as modified.

**Affirmed as modified.**