**In re the Marriage of Margit (Monica) McCABE, petitioner, Appellant,**

v.

**Russell J. McCABE, Respondent.**

**No. C2-88-826.**

Court of Appeals of Minnesota.

Nov. 1, 1988.

Review Denied Dec. 30, 1988.

Thomas G. Dunnwald, Schmitz Law Office, St. Peter, for petitioner, appellant.

Jerold M. Lucas, Mackenzie, Gustafson, Lucas & Riley, Ltd., St. Peter, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Margit (Monica) McCabe appeals from the trial court decree awarding sole physical custody of the parties' two children to the respondent, Russell J. McCabe.

## FACTS

Monica and Russell McCabe were married on May 19, 1975. They have two children: Eric, born in July 1979 and Sara, born in December 1981. Both parties were employed throughout the marriage, though Monica worked only part time for a period after the birth of the children. Russell is the manager of a hardware store and Monica is a licensed practical nurse working at a clinic in St. Peter. Monica also teaches one evening a week, does volunteer ambulance work one week a month, and has worked as a waitress on weekends.

Russell grew up in the St. Peter area where the parties still live. Most of his large family still lives nearby and see Russell and the children frequently.

Monica came to the United States from Hungary at the age of 13. Her parents live nearby and have frequent contact with their daughter and her family. In October of 1986, Monica confronted her parents about her father's sexual abuse of her during her childhood and also admitted to having an extra-marital affair. After this she went to her husband and told him about both the incest and the affair. As a result of these confrontations, Monica McCabe suffered a significant emotional crisis in her life which led to her hospitalization for a week at a mental health center. Shortly after she returned home, Monica told her husband that she wanted a divorce and rented a separate "sleeping" room. Since that time, she has slept away from the family home most nights.

Despite the physical separation, the parents tried to maintain a stable routine for

the children. Monica returned to the family home every morning before the children were awake and remained until everyone left for school and jobs. She returned each evening after work until the children went to bed. Both parents testified that conjugal relations continued for a short while after the physical separation, though less frequently. Russell had to assume more of the child care and household responsibilities after Monica moved her sleeping quarters, but both parents shared the cooking, cleaning, and caretaking.

Monica filed for divorce in October of 1987, almost a year after she moved out of the house. She sought both legal and physical custody of the children. Russell filed for joint legal and physical custody, provided that the children could remain in the home. On November 6, 1987, the court ordered temporary alternating physical custody.

The marriage dissolution and custody trial was held in January 1988. At the trial, both parties presented extensive testimonial evidence on the *Pikula* criteria used to determine who was the primary parent at the time of separation. The evidence covered the time period from spring of 1986 until the dissolution proceeding in January 1988. The trial court found that Russell McCabe was the primary parent and that it was in the children's best interest that Russell be awarded sole physical custody. The parties had stipulated to joint legal custody and it was so ordered.

### ISSUE

Was the trial court's determination regarding the best interests of the children sufficiently supported by the evidence?

### ANALYSIS

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Weatherly v. Weatherly*, 330 N.W.2d 890 (Minn.1983); *Berndt v. Berndt*, 292 N.W.2d 1 (Minn. 1980). The trial court's findings must be sustained unless clearly erroneous. *Id.*

The appellate court must give deference to the trial court's opportunity to assess the credibility of the witnesses. Minn.R.Civ.P. 52.01. *See Sefkow v. Sefkow*, 427 N.W.2d 203 (Minn.1988).

Minn.Stat. § 518.17, subd. 1 (Supp. 1987) provides that in custody determinations the court shall consider "the best interests of the child." The statute lists ten relevant factors to be considered and evaluated by the trial court. The recognition of the importance of emotional and psychological stability to a child's sense of security, happiness, and adaptation underlies all of the factors listed. *Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn.1985). For younger children, this stability is usually provided by the child's primary caretaker. *Id.* The *Pikula* court established the rule that:

> when both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Id.* at 712.

The primary parent determination must be made "at the time the dissolution proceeding was commenced." *Id.* at 714. The supreme court clarified the timing issue further in a footnote, stating that a court must look at:

> the point in time at which the family relationships were physically disrupted by events leading to the dissolution of the marriage, e.g., at the time of the parties' separation or the interruption of the functioning full family unit.

*Id.* at 714, fn. 3.

Appellant claims that the trial court erred in its primary parent determination by focusing on the time period after Monica rented her separate sleeping room. The trial court's findings and conclusions are unclear as to exactly what date it was using to make the primary parent determination. Several times during the trial, appellant's counsel attempted to clarify the date of the primary parent determination.

The trial judge concluded that "Respondent was the primary caretaker of the minor children from the spring of 1986." Yet, the court also found that the service of the Summons and Complaint was the disrupting event which caused an "interruption of the functioning family unit."

Identifying the actual date of disruption in this case is difficult. There is considerable evidence in the record that the parties made every effort to minimize the disruption to the children after Monica moved her sleeping quarters in December 1986. The children were aware of the separation, as both parents had explained it to them, but the family routines continued much as before. Monica would return home every morning and every evening to be with the family. She occasionally stayed the night at the family home if Russell was out of town or her daughter requested that she stay, and sexual relations between the parties continued intermittently for awhile after Monica rented her sleeping room. While Russell did assume more of the household and child care responsibilities, there is evidence that both parents continued to share the cooking, cleaning, laundry and supervision of the children. Russell testified that up until he was served with the actual divorce papers, he thought that there was a possibility he and Monica could work their differences out and that Monica had even made statements to the effect that they might get back together.

■ We find that, despite the trial court's apparent confusion about the exact date for making the primary parent determination, the trial court's determination that Russell was the primary parent prior to the divorce was not clearly erroneous. The trial judge should have been more specific about what date he was using to make the primary parent determination and should have excluded any evidence that was not relevant to that date. The *Pikula* court stated that "any disruption in the relationships between the children and their parents occasioned by the events leading to a divorce is irrelevant to a primary parent determination." *Pikula*, 374 N.W.2d at 714. The trial court, however, did hear evidence relating to both parents' roles beginning in the spring of 1986, six months before Monica took her separate sleeping room, until the fall of 1987 when the divorce papers were served. Even if irrelevant evidence had been excluded, we cannot say that the judge's primary parent determination was not supported by the evidence.

Recently, the Minnesota Supreme Court reiterated its position that the trial court is best equipped to make the determination as to a child's best interests. The court of appeals had reversed a trial court's determination that the father was the primary parent, finding that the record indicated that neither parent was the primary caretaker. The supreme court, in reversing, wrote:

> The evidence clearly supported the trial court's conclusion that Robert was Laura's primary caretaker. It would have supported a conclusion that neither parent was the primary caretaker as well. And, it would have supported a conclusion that Paula was Laura's primary caretaker. But it is the role of the trial court to make that determination.

*Sefkow v. Sefkow*, 427 N.W.2d at 211. The situation is similar here. The evidence heard by the trial judge could support any of the three possible primary caretaker determinations. We must therefore defer to the trial judge.

The *Pikula* primary parent doctrine is only a factor in a court's custody determination. The supreme court viewed the primary caretaker doctrine as an extension of the statutory criteria to be used in determining the best interests of a young child. *Sefkow*, 427 N.W.2d at 212. Minn.Stat. § 518.17, subd. 1 mandates that the trial court inquire into all relevant factors, including psychological, emotional, and spiritual aspects of the parenting role. *Id.* The trial court's findings must be sustained unless clearly erroneous. *Pikula*, 374 N.W.2d at 710.

■ The trial court made specific findings as to the best interests of the McCabe children. The findings concern the children's relationships with their grandpar-

ents, the respective financial and job situations of the parents, the mental health of the appellant, and the children's relationships with their parents. These are appropriate considerations under Minn.Stat. § 517.18, subd. 1 and must be sustained unless clearly erroneous. The trial court's conclusion that it was in the children's best interests to remain in the physical custody of their father was supported by the findings and must be affirmed.

## DECISION

AFFIRMED.

PARKER, J., dissents.

PARKER, Judge (dissenting).

I respectfully dissent because I believe the trial court's application of the *Pikula* factors to the time of commencement of the dissolution proceedings, long after the actual, determinable time of *disruption* of this family, is an error of law.

The events of October and November 1986 detailed in the majority opinion describe a thorough disruption of the family relationship. The evidence indicates that the parenting functions, cited in *Pikula* as determinative of the primary parent designation, changed after that period of trauma. In *Sefkow IV*, 427 N.W.2d 203 (Minn. 1988), the supreme court said that the determination is to be made "as of the date of separation" if that is reasonably close to the actual trial. *Id.* at 212. Monica McCabe rented and occupied a "sleeping room" in town immediately after Thanksgiving. The action was begun a year later.

I would remand to the trial court with directions to apply the *Pikula* criteria as of October–November 1986. The majority recognizes the trial court's confusion as to the time at which the analysis is to be applied; I do not believe proper review is possible unless the correct time period is identified and applied.

The supreme court's attention to the appropriate period for determining primary parenting reflects a recognition that people may change their behavior after disruption of close emotional relationships. This change may be a responsible, caring attempt to ameliorate pain—and it may be a calculated preparation for litigation. If the latter, consideration of actions during the period of separation may force persons, realistically, to be fearful of leaving a destructive relationship because it may be tantamount to surrendering any real hope of being granted custody of the children. We may also force persons to file for dissolution immediately upon separation and forego attempts at reconciliation for fear that planned and carefully documented behavior during that period may determine custody. It is counterproductive for the judiciary to structure decision-making in a manner that encourages tactical maneuvering and discourages responsible action.

The supreme court has identified the criteria and the time of application; I perceive it to be our duty to scrutinize trial court actions and remand when those directions are not followed.