In re the Marriage of Jeremy James ZANDER, petitioner, Respondent,

v.

Melinda Alice ZANDER, Appellant.

No. A05–2094.

Court of Appeals of Minnesota.

Aug. 22, 2006.

Anne Heimkes Tuttle, Tuttle & Bergeson, Shakopee, MN, for respondent.

Kevin J. Wetherille, Jaspers, Moriarty & Walburg, P.A., Shakopee, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; WILLIS, Judge; and MINGE, Judge.

## O P I N I O N

WILLIS, Judge.

In this appeal from a dissolution judgment, appellant wife argues that the district court abused its discretion by denying her motion for amended findings or alternatively a new trial because (1) respondent husband's change of residence after the dissolution trial is a sufficient basis for amended findings or a new trial; (2) the district court abused its discretion by awarding the parties joint legal and physical custody of their children when the record shows that the parties are unable to communicate or cooperate; and (3) the district court erred by concluding that the per capita payments appellant wife received from the Shakopee Mdewakanton Sioux (Dakota) Community during the parties' marriage were marital property. Because the record supports the district court's findings and we agree with the district court's legal conclusions, we affirm.

## FACTS

Appellant Melinda Alice Zander (wife) and respondent Jeremy James Zander (husband) have known each other since grade school, began dating in 1999, and were married in September 2001. Wife has two children, currently ages 15 and 12, from two previous relationships. Husband adopted both children in November 2001. During the marriage, husband was voluntarily unemployed, and wife did not work but received monthly per capita payments from the Shakopee Mdewakanton (Dakota) Sioux Community (Mdewakanton Community). The parties separated in January 2004. After the separation, husband lived in a trailer home owned by wife on the Mdewakanton reservation, and wife lived in Jordan, Minnesota.

In January 2004, husband petitioned for dissolution. In February 2004, the district court issued a temporary order granting the parties joint legal custody and wife sole physical custody of the children, subject to husband's parenting time. The district court conducted a trial on the dissolution from March 15 to 18, 2005, during which the court heard testimony from 13 witnesses, met in camera with the parties' children, and received 43 exhibits. In June 2005, the district court issued its dissolution judgment, granting the parties joint legal and physical custody and ordering a division of the parties' marital property. In July 2005, wife moved for amended findings or, in the alternative, a new trial. The district court denied the motion, and wife's appeal follows.

## ISSUE

Did the district court abuse its discretion by denying wife's motion for amended findings or a new trial?

## ANALYSIS

■ Wife appeals from both the dissolution judgment and the district court's order denying her motion to amend its findings or, in the alternative, for a new trial. A motion to amend findings must be based on the files, exhibits, and minutes of the court, not on evidence that is not a part of the record. *Otte v. Otte*, 368 N.W.2d 293, 299 (Minn.App.1985) (applying Minn. R. Civ. P. 52.02). When considering a motion for amended findings, a district court "must apply the evidence as submitted during the trial of the case" and "may neither go outside the record, nor consider new evidence." *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 238, 219 N.W.2d 641, 651 (1974). This court reviews denials of such motions under an abuse-of-discretion standard. *See Lewis v. Lewis*, 572 N.W.2d 313, 315 (Minn.App.1997) (noting that the purpose of a motion to amend findings is to permit the district court to review its own exercise of discretion), *review denied* (Minn. Feb. 19, 1998).

■ A district court's findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. A finding is "clearly erroneous" when this court has "the definite and firm conviction that a mistake has been made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn.App.2000) (quotation omitted). When determining whether findings are clearly erroneous, this court views the record in the light most favorable to the district court's findings. *Id.*

■ A party may move for a new trial on the grounds of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment and decree or order; or (5) satisfaction, release, or discharge of the judgment. Minn.Stat. § 518.145, subd. 2 (2004). This court reviews a district

court's decision whether to order a new trial for an abuse of discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990).

## I.

Wife argues that the district court's findings regarding husband's residence are clearly erroneous and that the district court's failure to amend its findings was an abuse of discretion. According to wife, when the district court made its custody determination, it placed "special emphasis" on the fact that husband resided on the reservation. Wife claims that husband did not intend to continue living on the reservation despite his testimony to the contrary and argues that her claim is supported by the fact that husband left the reservation residence shortly after the dissolution trial and began to live in a home that was not on the reservation.

In its order denying wife's motion, the district court concluded that because wife's allegations "concern post-trial conduct," they "cannot be a basis for amended findings." The district court found that, because husband "did not promise to live forever in the trailer on the reservation, nor did the Court order or expect him to do so," there was "no evidence that [husband] misrepresented his intentions to the Court so as to constitute fraud." The district court also concluded that husband's "post-trial conduct" was not newly discovered evidence because it was not evidence that existed at the time of the trial.

▇ The record shows that husband lived on the reservation at the time of the dissolution trial. The fact that husband moved after the dissolution trial, even before the district court issued its judgment, is evidence outside the trial record and therefore could not be considered by the district court in determining whether to amend its findings. The district court did not abuse its discretion by denying wife's motion to amend its findings relating to husband's residence.

▇ Also, the fact that husband moved from the reservation after the dissolution trial does not show that husband intended to deceive the district court by testifying that he intended to stay on the reservation. The record shows that husband testified that he hoped to move to a larger house in the future and that he did not represent that such a future house would necessarily be on the reservation. And the district court correctly concluded that the fact that husband moved after the dissolution trial is not "newly discovered evidence." Generally, newly discovered evidence "must have been in existence at the time of trial but not known to the party at that time." *Swanson v. Williams,* 303 Minn. 433, 436, 228 N.W.2d 860, 862 (1975). Because wife has provided no evidence of fraud or newly discovered evidence on which a new trial could be ordered, the district court did not abuse its discretion by denying wife's motion for a new trial.

## II.

▇ Wife argues that the district court abused its discretion by awarding the parties joint legal and physical custody of their children when the record shows that the parties are unable to cooperate in raising their children and that an intermediary is necessary to facilitate cooperation between the parties. In its order denying wife's motion for amended findings or a new trial, the district court concluded that it was "satisfied that the record sufficiently supports the result reached in the Judgment." Appellate review of a custody determination is limited to determining whether the district court abused its discretion by making findings unsupported by

the evidence or by improperly applying the law. *Silbaugh v. Silbaugh,* 543 N.W.2d 639, 641 (Minn.1996); *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). To assure proper consideration of children's best interests, the legislature has identified factors that a district court must consider when making a custody determination. Minn.Stat. § 518.17, subd. 3(a) (2004); *see* Minn.Stat. § 518.17, subd. 1(a) (2004) (enumerating best-interests considerations). When a party seeks joint physical custody, the district court is required to consider four additional factors: the parents' ability to cooperate, their methods of resolving disputes, whether it would be detrimental to the child for one parent to have sole authority over the child's upbringing, and whether domestic abuse has occurred between the parents. Minn.Stat. § 518.17, subd. 2 (2004).

Review of the judgment here shows that the district court made lengthy and detailed findings on the best-interests factors and the joint-custody factors to support its award of joint legal and physical custody. Wife challenges the district court's findings on two of the four joint-custody factors.

 When a district court awards joint legal or physical custody over the objection of one parent, the court must make detailed findings on each of the statutory joint-custody factors and explain how the factors led to the court's determination that joint custody would be in the best interests of the child. *Id.* "The court shall use a rebuttable presumption that upon request of either or both parties, joint legal custody is in the best interests of the child." *Id.* Here, before trial, husband requested joint legal and sole physical custody of the children, and wife requested sole legal and physical custody. Although at trial wife continued to seek sole physical custody, husband testified that he was in agreement with the custody evaluator's recommendation for joint legal and physical custody and that he would cooperate with an award of joint custody.

## A. Ability of Parents to Cooperate

The district court found that "the parties have the ability to cooperate in parenting the children." Wife argues, however, that the record demonstrates "a clear inability of the parties to cooperate with respect to raising their children" and shows that the parties are unable to communicate regarding the children and have different parenting philosophies. In support of her position, wife points to (1) the facts that husband allowed their son to rent a violent video game and allowed their daughter to get her ears pierced when husband knew that wife disapproved of both; (2) the fact that husband allowed their daughter to sleep in his bed with him; (3) husband's testimony that the parties do not agree on parenting styles and do not communicate; and (4) the custody evaluator's testimony that the parties do not agree on "parenting issues."

The district court stated that it was "mindful of the fact that the parties have been under stress during the pendency of the dissolution proceeding and that this situation has affected their relationship with each other, including their ability to communicate" but that "the parties have a history of effective co-parenting and have indicated their desire to do what is best for their children." The district court further found that the "parties have cooperated since the separation with respect to the temporary parenting time arrangements and have worked together with a parenting expeditor and the custody evaluator." The record supports the district court's findings.

The parenting-time expeditor testified that the parties "did a fine job" reaching

and following through on an agreement regarding a holiday parenting schedule; that wife allowed husband to have extra parenting time with the children; and that, although the parties needed the parenting-time expeditor's assistance to resolve parenting-time issues during the dissolution, "after divorces are final and things are more resolved that typically people are able to deal with more and more of their issues on their own."

The custody evaluator testified that despite the fact that she believed this to be "a particularly conflictual dissolution matter," she recommended joint physical custody because she believes "that the parties would be able to work together despite what ha[d] gone on" during the dissolution because "they have worked very well with [a parenting-time] expeditor." The custody evaluator testified that she believes that the parties have the same goals and objectives for their children; that "the parties really can agree on ... big issues"; and that "it would be detrimental to the children if one or the other party were to have the children in sole physical custody." The custody evaluator further testified that she believes that the parties "would learn to co-parent their children as time goes by when all this is over and done"; that the parties' different parenting styles create a good balance for the children; and that these differences would not cause problems for the parties because they have demonstrated that they love their children and would put them first. The custody evaluator recommended that the parties continue to use a parenting-time expeditor after the dissolution.

▆▆ Although the record shows that both of the parties testified to having difficulties communicating and agreeing during the dissolution, the record also shows that both cooperated with the parenting-time arrangements and disciplinary issues dur-

ing the separation and both acknowledge that the children want equal time with both parents. We conclude that the district court's finding on this joint-custody factor is supported by the record.

### B. Methods for Resolving Disputes

The district court found that

[t]he parties have a history of being able to communicate with each other regarding the children's needs and best interests. The Court does not expect that the parties will always agree with each other regarding parenting decisions, but they have demonstrated their ability to talk, seek and follow guidance, and work things out. The custody evaluator recommends that they use the services of a parenting time expeditor for a period of time following the dissolution to assist them in making the transition from adversarial parties to co-parents. Since they have interacted effectively with an expeditor during the pendency of this case, this appears to be an appropriate way for them to learn to communicate and work together following the dissolution.

Wife argues that in this finding the district court "placed emphasis on the use of a parenting time expeditor to resolve actual parenting decisions not just parenting time disputes" and that a parenting-time expeditor is not statutorily charged with resolving disputes unrelated to parenting time. The purpose of a parenting-time expeditor is "to resolve parenting time disputes by enforcing, interpreting, clarifying, and addressing circumstances not specifically addressed by an existing parenting time order and, if appropriate, to make a determination as to whether the existing parenting time order has been violated." Minn.Stat. § 518.1751, subd. 1b(a) (2004).

■ We conclude that the district court intended that the parties should continue to use the parenting-time expeditor as they did during the dissolution process and that the district court believed that the parties, with time, could work together on issues relating to their children. When evidence shows that parties to a dissolution are completely unable to communicate and cooperate, joint legal custody is not appropriate. *Wopata v. Wopata*, 498 N.W.2d 478, 482 (Minn.App.1993) (concluding that district court's finding that "parents are totally unable to agree" and "communication between them is impossible" did not support a joint-custody award).

■ But here the record shows that the parties were able to agree to and follow through with a parenting-time schedule and support each other in matters relating to the discipline of the children. The record also shows that the parties live close to each other, allowing the children to transfer between homes without disrupting their school and social lives; that both parties are able to provide the children with a safe home; and that the children have repeatedly stated that they want to spend equal time with each parent. Further, the custody evaluator testified that the children would be harmed if either parent were to have sole physical custody. All of these facts support the district court's joint-custody award. Although the record could support a different custody award, this court may not substitute its judgment for that of the district court when reviewing custody determinations. *McCabe v. McCabe*, 430 N.W.2d 870, 873 (Minn.App.1988), *review denied* (Minn. Dec. 30, 1988).

Because the district court made findings on the statutory factors relating to custody, including those related to joint custody, and the record supports its findings, we conclude that the district court did not abuse its discretion by awarding the parties joint legal and physical custody of their children.

## III.

Wife challenges the district court's characterization of her per capita payments from the Mdewakanton Community during the parties' marriage as marital property. The district court concluded that her "interest in the Mdewakanton Community's businesses is a non-marital asset, belonging only to her, [but that] the income received from the asset during the parties' marriage is marital property."

■ "Whether property is marital or nonmarital is a question of law, but a reviewing court must defer to the trial court's underlying findings of fact." *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn.1997). Property received by either spouse during a marriage is presumed to be marital. Minn.Stat. § 518.54, subd. 5 (2004). A party can rebut this presumption by showing that the property fits into one of the following categories of nonmarital property listed in Minn.Stat. § 518.54, subd. 5:

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

(d) is acquired by a spouse after the valuation date; or

(e) is excluded by a valid antenuptial contract.

*See also Robert v. Zygmunt*, 652 N.W.2d 537, 541 (Minn.App.2002) (discussing rebuttal of presumption), *review denied* (Minn. Dec. 30, 2002). A party claiming a nonmarital interest in property "must prove the necessary underlying facts by a preponderance of the evidence." *Wiegers*

*v. Wiegers,* 467 N.W.2d 342, 344 (Minn. App.1991).

Wife argues that the per capita payments she received from the Mdewakanton Community during the parties' marriage are nonmarital property because the "payments are unique to her birthright as a member of the Mdewakanton Sioux, a sovereign nation." The district court found that as a member of the Mdewakanton Community, wife "receives monthly per capita payments of approximately $84,000.00, based upon her 2004 federal income tax form 1099" and that these "payments flow from the revenue generated by the Community's casino and other business interests." The district court concluded, therefore, that such payments constituted income.

■■■■ " 'Income' means any form of periodic payment to an individual." Minn. Stat. § 518.54, subd. 6 (2004). And income acquired from a nonmarital asset during a marriage is marital property that is divisible between parties upon dissolution. *Swick v. Swick,* 467 N.W.2d 328, 331 (Minn.App.1991) (concluding that the interest that a nonmarital certificate of deposit earned during parties' marriage was income that should be divided as a marital asset upon dissolution), *review denied* (Minn. May 16, 1991); *see also Gottsacker v. Gottsacker,* 664 N.W.2d 848, 854 (Minn. 2003) ("Cash dividends ... [are] income and; therefore, [are] marital property.") (quoting *Nardini v. Nardini,* 414 N.W.2d 184, 194 (Minn.1987)); *cf.* Minn.Stat. § 518.58, subd. 1 (2004) (stating "[i]t shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife"). Further, wife does not argue that she kept the monthly payments she received from the Mdewakanton Community separate from the marital estate. There-

fore, even if the funds originating with the Mdewakanton Community could have been classified as wife's nonmarital property, she failed to show that result to be appropriate here. *Cf. Swick,* 467 N.W.2d at 330. Under these circumstances, we conclude that wife's monthly payments from the Mdewakanton Community fall within the statutory definition of income and, therefore, such payments received during the marriage are, to the extent that the funds were not expended during the marriage, marital property subject to division upon dissolution.

■■■■ Wife argues that this court should conclude that the per capita payments are nonmarital property because the "Mdewakanton Sioux Tribal Domestic Relations Code specifically states that all per capita payments are non-marital property belonging to the tribal member." The district court declined to apply this code provision because wife provided no legal authority to support her argument that the provision was controlling authority in the state district court. Husband argues that the code provision may apply to dissolutions brought in the tribal court but does not apply to this matter before the Minnesota state courts. Husband cites 28 U.S.C. § 1360 (2000), which provides:

(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, *and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:*

. . . .

Minnesota . . . . . . . . . . . . . . . . . All Indian country within the State, except the Red Lake Reservation.

. . . .

(c) *Any tribal ordinance* or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, *if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.*

(Emphasis added.) Because Minnesota law governs this dissolution and because the Mdewakanton Sioux Tribal Domestic Relations Code is inconsistent with Minnesota law, the tribal-code provision relied on by wife does not apply.

Wife relies on *Kucera v. Kucera,* 275 Minn. 252, 146 N.W.2d 181 (1966), to support her claim that husband should not receive any portion of the per capita payments that she received during their marriage. In *Kucera,* the supreme court affirmed a district court's decision to make no property award when the parties had a marriage in name only and lived together for less than a year. 275 Minn. at 256, 146 N.W.2d at 184. *Kucera* is distinguishable because here the parties lived together during all of their four-year marriage and wife does not claim that their marriage was one in name only.[1]

When the district court concluded that "an equal distribution of the marital property" was "fair and equitable," it considered the factors in Minn.Stat. § 518.58, subd. 1 (2004), and found that "[w]hile [wife] obviously contributed most of income, [husband] was at least an equal par-

ticipant in the marriage, and there is some evidence to suggest that he did more than [wife] in terms of parenting and childcare." The record supports this finding. The district court did not, therefore, abuse its discretion by distributing the marital property equally. *See Swanstrom v. Swanstrom,* 359 N.W.2d 634, 636 (Minn.App. 1984) (providing that in dissolution cases, district courts have very broad discretion to determine how income and property are to be distributed).

## DECISION

Because the record supports the district court's findings and because we agree with the district court that (1) husband's change of residence after the dissolution trial is insufficient basis for amended findings or a new trial; (2) the award of joint legal and physical custody to the parties is supported by the record; and (3) the per capita payments wife received from the Mdewakanton Community during the parties' marriage are income and therefore are marital property subject to division upon dissolution, we affirm the judgment and conclude that the district court did not abuse its discretion by denying wife's motion for amended findings or a new trial.

**Affirmed.**

MINGE, Judge (dissenting).

I concur in parts I and II of the opinion. I dissent from part III. I would hold that the per capita tribal payments received by appellant were nonmarital property. Minnesota recognizes that a gift, bequest, devise, or inheritance is nonmarital. *See* Minn.Stat. § 518.54, subd. 5(a) (2004). Although the narrow issue presented in part

---

**1.** Wife also relies on *Coursolle v. Coursolle,* No. C0-02-377, 2002 WL 31501904 (Minn. App. Nov. 12, 2002), an unpublished opinion. "Unpublished opinions of the Court of Appeals are not precedential." Minn.Stat. § 480A.08, subd. 3(c) (2004). Nevertheless, we conclude that *Coursolle* is distinguishable on the same grounds as *Kucera.*

III of this case is a matter of first impression, at least one reported decision addresses the general subject. *See Sheppard v. Sheppard,* 104 Idaho 1, 655 P.2d 895 (1982). In *Sheppard,* the Idaho court found that certain assets held in the name of an enrolled member of the Shoshone–Bannock tribe were community property for purposes of a marriage dissolution. *Id.* at 918. However, that court's discussion implies that if the assets or their source had originally been solely from the tribe, they may not have qualified as community property. *See id.* at 918–19.

In the case before us, the distributions are from the Shakopee Mdewakanton Sioux (Dakota) Community, a governmental entity. These distributions are not ordinary dividends from a nonmarital business investment or a distribution to a beneficiary from an established trust. Instead, they are being paid to appellant as an enrolled member of this particular tribal government. The payments to appellant are not guaranteed. They are determined each year by the tribal government. The amount paid is akin to a lump-sum distribution of tribal government assets which would be parallel to the principle distribution of a gift under Minnesota law. I would conclude that the clearly identified proceeds from tribal per capita distributions to appellant are nonmarital property and should be treated accordingly in this dissolution proceeding.

Given my conclusion that the application of Minnesota law to this case would result in the classification of the distributions as nonmarital property, I would not reach the question of any inconsistency between this state's law and the tribal provision in question.

As has been observed, the case before us is apparently a matter of first impression. One would expect that the parties would notify the Shakopee Mdewakanton Sioux (Dakota) Community of the proceeding and that when a provision of its code is in question, the Community would have had an opportunity to make an appearance in this case. The record does not disclose any such notification or appearance.