*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0448**

In re the Matter of: Ronald Lee Kish, petitioner,
Respondent,

vs

Kimberly Sue Wirth,
Appellant.

**Filed July 14, 2014
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-FA-11-5136

Nancy G. Moehle, Minneapolis, Minnesota (for respondent)

Randall A. Smith, Minneapolis, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hudson, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm the district court's award of joint legal custody because the district court implicitly addressed all of the required statutory factors and because its factual findings and credibility determinations are not clearly erroneous. We also affirm the district court's parenting-time schedule because the district court did not abuse its

discretion by awarding respondent fifty percent of overnights once the child starts kindergarten, and we affirm the district court's order appointing a parenting-time expeditor because the order does not exceed the district court's statutory authority.

## FACTS

Appellant Kimberly Sue Wirth and respondent Ronald Lee Kish became romantically involved in early 2010. M.K.-W. was born on January 4, 2011, and Kish acknowledged paternity. Wirth and M.K.-W. lived in a portion of Kish's parents' house until June 27, 2011.

In July 2011, Kish petitioned the district court for joint legal and physical custody and for parenting time. Wirth filed a counterpetition, seeking, among other things, sole physical and legal custody and a name-change for M.K.-W.

The district court convened an evidentiary hearing in December 2012, receiving testimony and documents from Kish, Wirth, a court-appointed custody and parenting-time evaluator, a guardian ad litem, a county social worker, and other witnesses.

Wirth testified that she moved out of Kish's home "because of the conditions of the house," including the excessive accumulation of personal property piled throughout the house. She also expressed concern about Kish's collection of guns, swords, and knives, and she noted conflicts with Kish over parenting issues. Specifically, she felt "forced" into acquiescing to Kish's desire that M.K.-W. be baptized as a Catholic and expressed frustration with Kish's reluctance to allow M.K.-W. to be circumcised. She objected to the degree of Kish's mother's involvement in M.K.-W.'s care and the lack of education in Kish's family.

2

Other witnesses challenged Wirth's claims. Kish testified that Wirth's photographic evidence of excessive property accumulation reflected the presence of Wirth's own belongings as well as construction that had since been completed. The custody and parenting-time evaluator opined that, although the pictures were "concerning," her visits to Kish's home did not reveal any conditions that supported those concerns. The evaluator's observations regarding Kish's home environment were corroborated by those of a county social worker and the guardian ad litem.

The custody and parenting-time evaluator compared Kish's and Wirth's parenting styles, stating that "[Wirth] is goal oriented, exceedingly organized and wedded to structure and routine," but that "[Kish] operates much differently, more in the moment and somewhat scattered." The evaluator recommended that the district court award sole physical custody to Wirth, but award joint legal custody. She also recommended a parenting-time schedule that would expand Kish's parenting time as M.K.-W. became older. The guardian ad litem endorsed these parenting-time recommendations, and also recommended that the district court appoint a parenting-time expeditor.

Based on the evidence it received, the district court ruled that "Wirth has not rebutted the presumption in favor of joint legal custody." It found that, "despite . . . differences between the parties, there is no evidence that the parties either do not have the ability to cooperate or lack the ability to communicate," that "they have managed to this point to cooperate and work out differences that could have arisen in both the areas of religious practice and medical decisions," and that "while either party would have preferred to make a different choice if each had sole authority . . . , they compromised

3

and cooperated." It observed that "the overall demeanor of the parties" indicated that both Kish and Wirth were "working in their own way to make [M.K.-W.'s] best interests a priority," and it predicted that "the parties will continue to do so."

Based on these findings, the district court awarded Kish and Wirth joint legal custody of M.K.-W. Based on separate findings addressing 13 best-interests factors, the district court awarded Wirth sole physical custody, conditioned on a parenting-time schedule for Kish that expands on M.K-W.'s second birthday, fourth birthday, and start of kindergarten. Quoting Minn. Stat. § 518.1751, subd. 2, the district court ordered the appointment of a parenting-time expeditor "to assist the parties 'to resolve parenting time disputes by enforcing, interpreting, clarifying and addressing circumstances not specifically addressed by an existing parenting time order.'" It also denied Wirth's motion for a name-change.

After Wirth appealed and this court referred the parties to the Family Law Appellate Mediation Program, the parties agreed to change M.K.-W.'s name to include both parents' surnames.

**D E C I S I O N**

**I.**

Wirth contends that the district court erred by awarding joint legal custody without sufficiently addressing the required statutory factors. "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). We review the district court's factual

4

findings only for clear error, giving due regard to the district court's opportunity to assess witnesses' credibility. *Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). Rather, a district court's findings are clearly erroneous only if review of the record "requires the definite and firm conviction that a mistake was made." *Id.*

"The guiding principle in all custody cases is the best interest of the child." *Pikula*, 374 N.W.2d at 711. Either party's request for joint legal custody raises a rebuttable presumption that joint legal custody is in the best interests of the child. Minn. Stat. § 518.17, subd. 2 (2012). If the district court awards joint legal custody over a party's objection, it must consider 13 best-interests factors, *see id.*, subd. 1 (2012), and "make detailed findings" regarding (1) the ability of the parents to cooperate in rearing their child, (2) methods for resolving parenting disputes and the parents' willingness to use them, (3) whether it would be detrimental to the child to give one parent sole authority, and (4) whether domestic abuse has occurred between the parents, *id.*, subd. 2. "[I]t is important that the basis for the [district] court's decision be set forth with a high degree of particularity." *Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn. 1989) (quotation omitted). Where a district court's findings are insufficient to show that it considered the required statutory factors, remand is necessary. *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn. 1986). But where the findings at least implicitly show that the statutory factors were considered, remand is not necessary. *See Tuthill v. Tuthill*, 399 N.W.2d 230, 232

(Minn. App. 1987) (noting that "a remand is not appropriate" when "the findings *indicate* that the relevant statutory factor[s]" were considered (emphasis added)).

Wirth challenges the district court's findings on two of the 13 best-interests factors, alleging that the district court failed to adequately consider safety problems posed by Kish's alleged collection of weapons and excessive accumulation of property. She cites her own trial testimony and that of her parents to support her claim that the parenting-time evaluator and the guardian ad litem failed to adequately investigate her safety concerns and that the district court erred by relying on their recommendations. She also alleges bias on the part of the guardian ad litem.

The district court addressed Wirth's safety concerns at length. It noted Kish's testimony that construction had been completed to improve his home after Wirth left, and it noted reports from home visits by the parenting-time evaluator, the guardian ad litem, and a county social worker, each concluding that there were no safety issues at Kish's residence. Because we defer to the district court's determination of witnesses' credibility, *Zander*, 720 N.W.2d at 364, and because Wirth offers no evidence to undermine the district court's determination that any safety problems have been addressed or to support her assertion that the guardian ad litem was biased or that any bias was shared by the parenting-time evaluator and the social worker that corroborated the guardian ad litem's report, the district court's findings on the best-interests factors that Wirth challenges were not clearly erroneous.

Wirth also alleges that the district court failed to address the four additional factors that it must address when it orders joint legal custody over the objection of a party.

Although the district court here did not specifically cite each factor listed in Minn. Stat. § 518.17, subd. 2, the record reveals that it addressed each of them implicitly. Regarding the first factor, the district court found that Wirth and Kish had "compromised and cooperated" in their attempts to resolve their disagreements about medical procedures for M.K.-W. and about his religious upbringing. It noted that both the parenting-time evaluator and the guardian ad litem had "based their ultimate conclusions and recommendations on the actual willingness of both Wirth and Kish to cooperate despite their differences." It concluded that "the parties have worked well together in light of the pronounced differences to their approaches and styles." Although Wirth points to bits of testimony that might have supported a contrary finding, the record contains sufficient support for the district court's conclusion so that it is not clearly erroneous. *Cf. LaChapelle v. Mitten*, 607 N.W.2d 151, 160 (Minn. App. 2000) (affirming a district court's award of joint legal custody notwithstanding "evidence in the record of the parties' inability to cooperate" when the record also contained evidence that the parties "are willing to try to cooperate" and where "there are methods in place for resolving disputes that might arise"), *review denied* (Minn. May 16, 2000).

The district court implicitly addressed the second factor—methods for resolving parenting disputes and the parents' willingness to use them—when it ordered the appointment of a parenting-time expeditor to assist them in resolving any disputes. Wirth's challenge is also belied by subsequent developments in this case. Specifically, she asserts that her testimony during trial established that mediation would be ineffective in resolving disputes, but the parties agreed to resolve their dispute over changing M.K.-

7

W.'s name. Accordingly, the district court's implicit finding that methods exist that can resolve parenting disputes was not clearly erroneous.

The district court also implicitly addressed the third factor— whether it would be detrimental to the child to give one parent sole authority—when it concluded that "the parties' cooperation so far has contributed to [M.K.-W.'s] best interest by giving [him] the benefit of each of their different but equally valid perspectives." By finding that the parties' differing perspectives and approaches to parenting are "equally valid" and beneficial to M.K.-W., the district court implicitly concluded that it would not be beneficial to M.K.-W. to give one parent sole authority. Notwithstanding Wirth's criticisms of Kish's lifestyle and parenting style, the district court's conclusion is not clearly erroneous.

The district court explicitly addressed the fourth factor—whether domestic abuse had occurred between the parties—and found that no abuse had occurred. Wirth does not challenge this determination, so it is not clearly erroneous.

Although "we would prefer more particularized findings," *Nies v. Nies*, 407 N.W.2d 484, 488 (Minn. App. 1987), on the district court's consideration of the first three statutory factors required under Minn. Stat. § 518.17, subd. 2, the district court addressed them implicitly. Therefore, its findings are sufficient to support its ruling that Wirth did not rebut the statutory presumption in favor of joint legal custody.

**II.**

Wirth also challenges the district court's parenting-time schedule. We review the district court's parenting-time schedule for abuse of discretion. *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009).

Wirth asserts that the district court abused its discretion because, rather than adopt the schedule proposed by either the guardian ad litem or the parenting-time evaluator, the district court ordered a parenting-time schedule that would result in M.K.-W. remaining overnight with Kish fifty percent of the time once M.K.-W. starts kindergarten. She offers no authority to support the argument that the district court is required to adopt the parenting-time recommendations of a guardian ad litem or a parenting-time evaluator or that the district court is required to explain its reasons for deviating from such recommendations. She also offers no authority to support the argument that this particular allocation of parenting time once the child starts kindergarten constitutes an abuse of the district court's discretion. Accordingly, we decline to address the argument. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection.").

**III.**

Wirth alleges that the district court's order that a parenting-time expeditor be appointed exceeded its statutory authority because she and Kish have not had any disputes regarding the court-ordered parenting-time schedule. A district court may, either

upon request by a party or on its own motion, order the appointment of a parenting-time expeditor "to resolve parenting time disputes that occur under a parenting time order . . . after a decree is entered." Minn. Stat. § 518.1751, subd. 1 (2012).

> The purpose of a parenting-time expeditor is to resolve parenting time disputes by enforcing, interpreting, clarifying, and addressing circumstances not specifically addressed by an existing parenting time order and, if appropriate, to make a determination as to whether the existing parenting time order has been violated. A parenting time expeditor may be appointed to resolve a onetime parenting time dispute or to provide ongoing parenting time dispute resolution services.

*Id.*, subd. 1b(a) (2012). We review the district court's decision to appoint a parenting-time expeditor for an abuse of discretion. *Nolte v. Mehrens*, 648 N.W.2d 727, 731-32 (Minn. App. 2002). But we review its compliance with the statutory requirements governing the appointment of a parenting-time expeditor de novo. *Braith v. Fischer*, 632 N.W.2d 716, 724 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001).

Nothing in the parenting-time-expeditor statute requires that there be an existing parenting-time dispute before the district court may order the appointment of an expeditor. On the contrary, the statute explicitly permits a district court to appoint an expeditor on its own motion to *either* to resolve an existing dispute *or* "provide ongoing parenting time dispute resolution services." *Id.* Wirth's challenge to the district court's order for appointment of a parenting-time expeditor is therefore meritless.

Because we affirm the district court's order in all respects, Wirth's request that the matter be assigned on remand to a different judge is moot.

**Affirmed.**

10