*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0060**

Kristina Hacker Tompach, petitioner,
Appellant,

vs.

Paul Christopher Tompach,
Respondent.

**Filed August 18, 2014**
**Affirmed**
**Rodenberg, Judge**

Hennepin County District Court
File No. 27-FA-09-6820

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota; and

Eric J. Braaten, Gena A. Braaten, Braaten & Braaten, P.A., Chaska, Minnesota (for appellant)

Joani C. Moberg, Henschel Moberg, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant-mother Kristina Hacker Tompach challenges the district court's denial of her motion to relocate. Because the district court did not abuse its discretion in weighing the best-interests factors, we affirm.

## FACTS

Appellant and respondent-father Paul Christopher Tompach were married in September 2000. Two children were born to the marriage, a daughter born June 23, 2003, and a son born February 1, 2007. Father is a self-employed oral surgeon. Mother is trained as a nurse practitioner with both a bachelor and master's degree in nursing, but has been out of the workforce since March 2005, working as a stay-at-home mother.

The parties' marriage was dissolved in February 2011. Mother was awarded the homestead in Eden Prairie, and rehabilitative spousal maintenance in the amount of $8,500 per month until August 31, 2014. The district court incorporated the parties' stipulated parenting plan into the judgment and decree, providing that the parties share joint legal custody, with mother having primary physical custody of the children. The parenting plan provides father with parenting time every other weekend from Thursday at 4:00 p.m. until Sunday at 6:00 p.m., every Tuesday from 4:00 p.m. to 7:30 p.m., and an additional non-overnight visit with the children on the Thursdays before mother's weekend parenting time. The parenting plan further provides that "[n]either party shall move the residence of the minor children of the parties from Minnesota except upon order of the court or with the consent of the other party."

Although the parties agreed to the terms of the parenting plan, they were unable to settle a number of financial issues, which were tried to the district court in November 2010. During the trial, mother requested permission to relocate the children's residence to Madison, Wisconsin, contending that the primary reason for the proposed relocation was to be near her extended family and to "seek a better life financially." Mother testified about a possible romantic interest in Madison.

The district court found[1] that "it is not in the children's best interests to grant [mother's] request to relocate the children's residence to Wisconsin." In analyzing the children's best interests, the district court found that (1) a move to Wisconsin will hinder the children's relationship with father; (2) moving the children farther away from father would have an adverse emotional and developmental impact on them; and (3) mother was unable to demonstrate that her financial circumstances would be better in Wisconsin or that she would be able to find employment that would benefit the family. The district court found that, although mother has familial support in Wisconsin, "[i]t is more important for the children to remain in Minnesota and maintain a greater relationship with [father]." It also found that, although father had been verbally abusive to her, mother did not prove domestic abuse under Minn. Stat. § 518B.01, nor did she allege that father was ever abusive to the children. The district court denied mother's motion to relocate the children to Wisconsin. Mother did not appeal from the denial.

---

[1] We confine our recitation of the facts to those pertinent to this appeal. The district court made extensive and detailed findings in its 27-page findings of fact, conclusions of law, order for judgment, and judgment and decree, many of which pertain solely to the then-disputed financial issues.

Mother then became engaged to marry a man who resides in Madison. Mother submitted a request to the parties' parenting consultant that the parties move to an every-other-week parenting time schedule to accommodate her intended move to Madison. Mother claimed that she intended to keep a Minnesota residence where she would spend her parenting time with the parties' children.

The parenting consultant denied mother's request to change the parenting-time schedule. Mother moved the district court for an order reversing or modifying the parenting consultant's decision. Mother also moved for a modification of the parenting-time schedule to one where father would have the children every other weekend without mid-week parenting time but would have longer periods of parenting time in the summers. The district court construed mother's motion as one to "move the children's primary residence to Madison." It found that the "only thing that has changed since [mother] lost this request following trial is that she has become engaged to a man who lives in Madison. This is not enough." And it denied mother's motion without an evidentiary hearing because "[t]here is no substantial change in circumstances from those present at the time of the February 2011 decree to support an alternate outcome to a request to move the children's residence out of state."

Mother appealed. We reversed and remanded for the district court to make the required findings under section 518.175, subdivision 3 of the Minnesota Statutes. On remand, the parties submitted the factual issues to the district court for resolution on written affidavits and without live testimony. The district court denied mother's motion

to relocate the residence of the children in a detailed order addressing the statutory criteria. This appeal followed.

**D E C I S I O N**

Our review of a removal decision "is limited to considering whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation omitted). We will set aside a district court's findings of fact only when they are clearly erroneous. *Id.* But the interpretation of a statute is a question of law, which we review de novo. *Id.* at 282.

A parent who has physical custody of a child subject to a parenting time order may not remove the child to another state except upon a court order or with the consent of the noncustodial parent. Minn. Stat. § 518.175, subd. 3(a) (2012). In determining whether to permit a parent to move a child's residence to another state when the other parent opposes the move, the district court must base that decision on the best interests of the child by assessing eight statutory factors. *Id.*, subd. 3(b) (2012). These factors are: (1) the child's relationship with the parents and others; (2) the child's development and needs; (3) the feasibility of preserving the child's relationship with the nonrelocating parent; (4) the child's preference; (5) whether there is a pattern by the relocating parent to promote or thwart the child's relationship with the other parent; (6) whether relocation will enhance the child and the relocating parent's quality of life; (7) each parent's reasons for opposing or supporting relocation; and (8) the safety and welfare of the child or relocating parent relating to domestic abuse. *Id.* The parent seeking to remove a child

5

from Minnesota bears the burden of proof unless that party has been a victim of domestic abuse by the other parent. *Id.*, subd. 3(c) (2012).

Here, the district court analyzed each of the statutory factors and recited evidentiary support for its findings. It considered that the proposed relocation would have a negative impact on the children's development because there would be long periods of time between visits with each parent. The district court concluded that, if it granted the request for relocation, the children would not see their father for periods of 12 days at a time. It found that this irregular schedule "would not be developmentally appropriate" and "would likely negatively impact [the children's] emotional development, particularly though not solely because they have already experienced their parents' divorce and at least two moves and at least one (brief) school change since 2009 and the significant hostility of the parents' conflict."

The district court also considered the impact of the effectiveness of the parties' ability to co-parent if mother relocated. It determined that, "in light of the parties' poor ability to cooperate as co-parents, it is very likely that [father's] ability to be meaningfully involved in legal custody decisions," such as educational options and medical decisions, would be diminished by relocation.

Mother argues that the record does not support the district court's conclusion that mother's proposed schedule "would negatively impact [the children's] emotional development." There was no expert testimony about the impact of relocation and particularly the reduction of frequency in father's parenting time. But the district court credited father's affidavit, stating that the children have emotional difficulty when away

6

from either parent for an extended amount of time. In his affidavit, father stated that, because of their age, the children struggle emotionally when they are away from each parent for extended periods. He stated that he has "received sad voicemails and text messages from [daughter] because she missed [him,] and [son] had been teary when [he talks] with him on the telephone."

In *Anh Phuong Le v. Holter*, we affirmed the district court's denial of a mother's motion to relocate the children out of state. 838 N.W.2d 797, 804-05 (Minn. App. 2013), *review denied* (Minn. Dec. 31, 2013). The district court credited the father's argument that the children would be negatively affected if he had less frequent contact with his children, even if the total number of parenting days decreased only slightly. *Id.* at 803. We held that "[t]he district court did not abuse its discretion in giving greater weight to [the father's] prediction as to the impact the move would have on the children's relationship with [the father]." *Id.* Here, as in *Anh Phuong Le*, the record supports the district court's findings and conclusions concerning the impact a move to Wisconsin would have on the children.

Mother argues that the district court erred in insufficiently considering father's parenting deficiencies. She contends that these claimed deficiencies dictate a different result concerning her request to relocate the residence of the children. It is true that father declined even the statutorily presumed 25% parenting time in the parties' original agreement. He also left a practice group of which he was formerly a part to work in a solo surgical practice that requires a rigid schedule, which schedule is often inconsistent with father interacting with the children as their needs would indicate. Many of mother's

7

arguments are not only supported by the record, they also have considerable persuasive value. But our task is not to reweigh the evidence. *See Goldman*, 748 N.W.2d at 284. That the record would support a conclusion other than those of the district court is not a basis for reversal. *Zander v. Zander*, 720 N.W.2d 360, 368 (Minn. App. 2006) (upholding custody determination and observing that, while record could support different custody decision, we may not substitute our judgment for that of district court), *review denied* (Minn. Nov. 14, 2006).

The district court is best situated to make findings of the sort involved here. The same judicial officer has decided several litigated questions in this case and (despite this particular issue having been submitted for decision on affidavits) has had the opportunity to observe the parties and their interaction in this protracted and acrimonious litigation. It specifically considered father's disdain for mother, which has motivated some of father's actions. It also considered that, although mother's actions have not been motivated by a desire to thwart the children's relationship with father, her "desire to be with her fiancé" has led her to make decisions that have negative consequences for the children. Because there is evidentiary support for the district court's decision, it is not for us to substitute our judgment for that of the district court concerning the children's best interests. The law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000).

Mother also vigorously argues that the district court abused its discretion in declining to consider an additional factor concerning the proposed relocation of the

8

children: the impact of its order if it denied mother's motion for relocation and she moved to Wisconsin anyway. But the district court *did* consider this argument and rejected the proposed factor as favoring a grant of her motion, stating:

> [Mother] argues that, if relocation is denied and she moves away anyway, the detriment to the children from being separated from her would be worse than the separation from [father]. . . . This argument is flawed because [mother] does not have to move to Madison. If she moves to Madison after this court order and leaves the children behind, such would be her choice and not by court order; the negative impact of her voluntarily and unnecessarily choosing to move away from her children is not a factor to be considered in deciding a relocation motion.

The statute requires the district court to consider the eight factors identified above. Minn. Stat. § 518.175, subd. 3(b). The district court may, in its discretion, consider other factors. *Id.*; *Anh Phuong Le*, 838 N.W.2d at 802. The district court here acted within its discretion in analyzing each of the eight statutorily prescribed factors and in not weighing mother's proposed additional factor as favoring relocation.[2]

The district court's discretion in a motion to relocate the residence of a child is broad. *See Goldman*, 748 N.W.2d at 284. Mother's motion to relocate the children, and her announced decision to relocate herself regardless of the outcome of her motion, coupled with father's disdain for mother, presented the district court with a question to

---

[2] We do not hold, and our opinion should not be read as suggesting, that this proposed factor could *never* be considered by a district court. Here, after considering the proposed additional factor, the district court determined that it did not weigh in favor of granting the motion to relocate the residence of the children. Section 518.175, subdivision 3(b) authorizes the district court to make the best-interests determination by identifying a nonexclusive list of factors, and it is easy to imagine another case, where a parent has no choice at all but to relocate, where the additional factor of the inevitability of the move might be weighed differently by a district court.

which there is no universally or provably correct answer (despite each parent maintaining that his or her own position is the only acceptable answer for the children).[3]  Any judge who might consider these facts would likely weigh the evidence differently.  But it is not our proper role on appeal to weigh the evidence.  Rather, it is for us to review whether mother has shown that, in weighing that evidence, the district court abused its discretion.  *Id.*  We discern no abuse of the district court's discretion.

**Affirmed.**

---

[3] Except for their intransigence with one another, the parties appear to be good parents. They are educated and capable people who love their children.  And their children love each of them.  It would be far better that the parents cooperate to find agreement on what is in the best interests of the children, or at least that they cooperatively find the "least detrimental alternative."  *See* The Hon. W. Dennis Duggan, *Rock-Paper-Scissors: Playing the Odds with the Law of Child Relocation in America*, 45 FAM. CT. REV. 193, 193 (2007).